No. 26-1552

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**MARYLAND BUILDING INDUSTRY ASSOCIATION, INC.,** *et al.*,

*Plaintiffs-Appellants*,

**v.**

**SERENA COLEMAN McILWAIN,**

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the District of Maryland
(Deborah L. Boardman, District Judge)

---

**AMICUS BRIEF OF THE STATES OF COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, VERMONT, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

---

SUBMITTED BY:

**PHILIP J. WEISER**
Attorney General
State of Colorado

JACLYN M. CALICCHIO
DAVID BANAS
W. CORY HALLER
CARRIE NOTEBOOM
Assistant Attorneys General
Natural Resources and Environment Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720.508.6000
Email: Jackie.calicchio@coag.gov
David.banas@coag.gov
Cory.haller@coag.gov
Carrie.noteboom@coag.gov

# TABLE OF CONTENTS

AMICI CURIAE'S IDENTITY, INTEREST, AND AUTHORITY TO FILE........1

SUMMARY OF ARGUMENT ..................................................................3

ARGUMENT ........................................................................................4

    I.  EPCA ensures uniform appliance performance standards—it does not preempt state building regulations intended to decrease greenhouse gas emissions.......................................................................................4

        A. EPCA's initial disclosure-based approach resulted in a patchwork of state appliance efficiency standards...............................................5

        B. Congress ensured uniformity by preempting states from implementing performance standards for covered products, as measured by carefully prescribed testing procedures. ....................................................6

        C. EPCA's legislative history and DOE's long-held interpretation of EPCA confirm the preemption provision is narrowly focused on appliance performance standards.................................................9

        D. EPCA does not preempt Maryland's law because Maryland's law does not concern the energy efficiency or energy use of covered products.....12

    II. EPCA's narrow preemption provision carefully balances the need for uniform appliance performance standards with Congress's desire to preserve and encourage states' ability to exercise their traditional police powers......14

        A. EPCA encourages state and local regulation of buildings to improve the efficient use of energy and reduce emissions...........................15

        B. Related statutes reinforce states' exercise of their traditional authority to adopt environmental and energy regulations. .........................17

    III.Appellants' preemption theory would upset EPCA's balancing of national and state interests and lead to boundless preemption...................19

CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

**CASES**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*,
410 F.3d 492 (9th Cir. 2005) ....................................................................... 4, 5, 6

*Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*,
No. 23-CV-11292 (RA), 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) ...............14

*Ass'n of Contracting Plumbers of the City of New York., Inc. v. City of New York*,
180 F.4th 434 (2d Cir. 2026) ........................ 6, 8, 9, 10, 12, 13, 14, 19, 20, 21, 22

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ....................................................................................11

*Building Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
683 F.3d 1144 (9th Cir. 2012) ....................................................................15

*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ................................................................. 8, 11

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014) ........................................................................................18

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) ................................................................................ 13, 22

*GenBioPro, Inc. v. Raynes*,
144 F.4th 258 (4th Cir. 2025) .....................................................................19

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) ....................................................................................22

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ....................................................................................14

*Haig v. Agee*,
453 U.S. 280 (1981) ....................................................................................10

*In re Brandt-Airflex Corp.*,
843 F.2d 90 (2d Cir. 1988) ..........................................................................20

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001) ...................................................................................22

*Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain*,
   828 F. Supp. 3d 617 (D. Md. 2026) ............................................................. 12, 13

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ................................................................. 14, 15

*Metropolitan Taxicab Bd. of Trade v. City of New York*,
   615 F.3d 152 (2d Cir. 2010) .......................................................................21

*Monsalvo v. Bondi*,
   604 U.S. 712 (2025) ...................................................................................10

*Mulhern Gas Co. v. Mosley*,
   798 F. Supp. 3d 304 (N.D.N.Y. 2025) ....................................................14

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995) ................................................................. 12, 18

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
   413 U.S. 405 (1973) ...................................................................................18

*Nat. Res. Def. Council, Inc. v. Herrington*,
   768 F.2d 1355 (D.C. Cir. 1985)....................................................................4

*Nat'l Ass'n of Home Builders of the U.S. v. Dist. of Columbia*,
   No. 24-CV-02942, 2026 WL 837674 (D.D.C. Mar. 26, 2026)....................... 8, 14

*Nat'l Ass'n of Home Builders of the U.S. v. Montgomery Cnty.*,
   No. 24-CV-03024, 2026 WL 817322 (D. Md. Mar. 25, 2026)..................... 14, 18

*Oneok, Inc. v. Learjet, Inc.*,
   575 U.S. 373 (2015) ...................................................................................14

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988) ...................................................................................14

*Rutledge v. Pharmaceutical Care Management Association*,
   592 U.S. 80 (2020) ...................................................................................13

*Stone v. Mississippi*,
  101 U.S. 814, (1879) ...............................................................................15

*U.S. Dep't of Energy v. Friedrich Air Conditioning, LLC* .........................................7

*Wash. Gas Light Co. v. Prince George's Cnty. Council*,
  711 F.3d 412 (4th Cir. 2013) ...................................................................20

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ...............................................................................11

*Yawn v. Dorchester Cnty.*,
  1 F.4th 191 (4th Cir. 2021) ....................................................................15

**STATUTES**

42 U.S.C. § 6291 ..............................................................................7, 8

42 U.S.C. § 6297 ..............................................................................2, 6

42 U.S.C. § 6311 ................................................................................6

42 U.S.C. § 6316 ................................................................................6

42 U.S.C. § 6831 ...............................................................................17

42 U.S.C. § 7401 ...............................................................................14

42 U.S.C. §§ 6321-6325 ................................................................... 16, 18

16 Del. C. § 7602 .............................................................................1, 2

Colo. Rev. Stat. § 25-7-142 ...................................................................1

Colo. Rev. Stat. § 25-7-102 ...................................................................2

Haw. Rev. Stat. § 225P-5 .....................................................................2

N.Y. Energy Law § 11-104(6)-(8) ...........................................................1

N.Y. Exec. Law § 378(19) .....................................................................2

Energy Policy and Conservation Act,
  Pub. L. No. 94-163, 89 Stat. 871 (1975) ............................................ 9, 15

Energy Conservation Standards for New Buildings Act,
Pub. L. No. 94-385, 90 Stat. 1125 (1976) ......................................................17

Inflation Reduction Act of 2022,
Pub. L. No. 117-169, 136 Stat. 1818 (2022) .................................................17

National Energy Conservation Policy Act,
Pub. L. No. 95-619, 92 Stat. 3206 (1978) ................................... 5, 9, 16

**RULES**

Federal Rule of Appellate Procedure 29(a)(2) ...........................................1

**REGULATIONS**

10 C.F.R. § 430.33 ..................................................................................11

10 C.F.R. § 431.292 ...............................................................................20

47 Fed. Reg. 14424, 14456 (Apr. 2, 1982) ............................................9

47 Fed. Reg. 57198, 57215 (Dec. 22, 1982) ........................................10

71 Fed. Reg. 12634, 12635 (Mar. 13, 2006).........................................11

75 Fed. Reg. 59470, 59530 (Sept. 27, 2010) ........................................11

85 Fed. Reg. 30878, 30879 (May 21, 2020).........................................11

89 Fed. Reg. 28856, 28865 (Apr. 19, 2024) .........................................11

Md. Code Regs. 26.28.03 (2026)..............................................................3

Or. Admin. R. ch. 340, div. 253 & 273 ..................................................2

**LEGISLATIVE AUTHORITIES**

H.R. Rep. No. 100-11 (1987)............................................................ 6, 10

S. Rep. No. 94-516 (1975) ......................................................................4

S. Rep. No. 100-6 (1987) ................................................................. 5, 10

**OTHER AUTHORITIES**

*Lee Schipper, Jack M. Hollander, Mark Levine & Paul P. Craig, The National Energy Conservation Policy Act: An Evaluation*, 19 Nat. Res. J. 765 (1979) ...............................................................................4

**AMICI CURIAE'S IDENTITY, INTEREST,
AND AUTHORITY TO FILE**

The States of Colorado, Connecticut, Delaware, Hawai'i, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Vermont, and the District of Columbia ("Amici States") file this brief as amici curiae in support of Defendant-Appellee Serena Coleman McIlwain in her official capacity as the Secretary of the Maryland Department of the Environment and affirmance, pursuant to Federal Rule of Appellate Procedure 29(a)(2).[1]

Direct and indirect greenhouse gas emissions from homes and businesses accounted for 31 percent of total U.S. greenhouse gas emissions in 2022, the most recent year for which data is available.[2] Direct emissions from commercial and residential structures were 13 percent of total U.S. greenhouse gas emissions.[3] To safeguard the public from increasing emissions from the built environment, and acting pursuant to their historic police powers, many states, including several Amici States, have established programs to help their residents understand, track, and reduce greenhouse gas emissions from buildings.[4] Like Maryland, several Amici

---

[1] No party's counsel authored any part of this brief, nor did anyone contribute money to fund its preparation or submission.

[2] U.S. EPA, *Commercial and Residential Sector Emissions* (Mar. 10, 2026), https://www.epa.gov/ghgemissions/commercial-and-residential-sector-emissions.

[3] *Id.*

[4] *See, e.g.*, Colo. Rev. Stat. § 25-7-142; 16 Del. C. § 7602; N.Y. Energy Law § 11-104(6)-(8).

States have enacted a variety of laws and regulations to combat the threat of climate change and protect public health and safety, including, in some cases, building performance standards and other laws designed to achieve emission reductions goals.[5]

Until recently, there was no question that these efforts were permissible and not subject to the narrow preemption provision in the Energy Policy and Conservation Act ("EPCA" or "the Act"), 42 U.S.C. § 6297(c). That provision has long been understood to reinforce the uniformity of federal performance standards for appliances regulated under EPCA. But following an outlier decision from the Ninth Circuit (involving a local gas infrastructure ban different from the Maryland law at issue here), state and local laws aimed at reducing building emissions, including Maryland's, have been increasingly subject to EPCA preemption challenges. Because these state and local laws serve important public interests and fit squarely within the police powers left undisturbed by EPCA, the Amici States urge the Court to find that Maryland's law is not preempted and affirm the district court's well-reasoned opinion.

---

[5] *See, e.g.*, Colo. Rev. Stat. § 25-7-102; 16 Del. C. § 7602; Haw. Rev. Stat. § 225P-5; N.Y. Exec. Law § 378(19); Or. Admin. R. ch. 340, div. 253 & 273.

**SUMMARY OF ARGUMENT**

EPCA's preemption provision ensures that manufacturers of appliances regulated by the United States Department of Energy (DOE) under EPCA are subject to uniform federal energy conservation standards. Nothing in EPCA's plain text or history suggests that the statute was intended to broadly preempt state and local laws designed to address building-wide greenhouse gas emissions like the Maryland law at issue here.

Maryland's Building Energy Performance Standards ("BEPS")[6] apply emissions standards to certain buildings, without regard to the quantity of energy that any particular appliance in those buildings is designed, manufactured, or engineered to consume. The law allows for various options to achieve compliance, including some, like carbon capture and payment of fees, that do not necessarily require reducing a particular building's emissions, and others, like insulation and building envelope retrofits, that do not affect appliances at all, regardless of fuel source. Consistent with the majority of courts that have considered EPCA's preemption provision and its application to similar state and local laws, the district court correctly found that Maryland's BEPS do not "concern" the "energy use" of

_____

[6] Md. Code Regs. 26.28.03 (2026) (adopted pursuant to Md. Code Ann., Env't §§ 1-404, 2-301, 2-302, 2-1205, 2-1602).

EPCA-covered products, as those terms are used in EPCA, and, accordingly, are not preempted.

Appellants' contrary interpretation contradicts the established understanding of EPCA and would upend settled expectations—with potentially severe consequences for states' and localities' ability to regulate for the protection of their residents. This Court should reject that theory and affirm.

**ARGUMENT**

**I. EPCA ensures uniform appliance performance standards—it does not preempt state building regulations intended to decrease greenhouse gas emissions.**

Congress enacted EPCA in response to the energy crisis precipitated by the Organization of Oil Producing and Exporting Countries' oil embargo in 1973. *Nat. Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1362, 1364 (D.C. Cir. 1985). Intended to promote energy conservation across the building, industrial, and transportation sectors,[7] EPCA "was designed, in part, to reduce the United States' "domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 498–99 (9th Cir. 2005) (quoting S. Rep. No. 94–516, at 117 (1975)).

---

[7] Lee Schipper, Jack M. Hollander, Mark Levine & Paul P. Craig, *The National Energy Conservation Policy Act: An Evaluation*, 19 Nat. Res. J. 765 (1979).

**A. EPCA's initial disclosure-based approach resulted in a patchwork of state appliance efficiency standards.**

Initially, EPCA focused on creating labeling requirements for consumer appliances. "Congress believed that better informed consumers and voluntary efforts by manufacturers would make energy efficiency standards unnecessary." *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 499. Accordingly, EPCA required manufacturers to label appliances with measures of energy efficiency and energy use and directed further action only if "the labeling program proved ineffective." *Id.*

After this less coercive regulatory approach to improving appliance energy efficiency failed to achieve the desired results, Congress required DOE to establish mandatory efficiency standards for covered home appliances. *See* National Energy Conservation Policy Act, Pub. L. No. 95-619, § 422(a), (c), 92 Stat. 3206, 3259 (1978).

But instead of embracing this mandate, DOE liberally granted preemption waivers allowing states to establish their own appliance energy conservation standards, resulting in a patchwork of state and local appliance energy efficiency requirements. S. Rep. No. 100-6, at 4 (1987). "[T]o counteract the systems of separate state appliance standards that had emerged," Congress enacted the National Appliance Energy Conservation Act (NAECA) of 1987. *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 500 (quoting S. Rep. No. 100-6, at 4).

NAECA amended EPCA to establish mandatory federal standards to improve energy efficiency of covered appliances. To further prevent a patchwork of standards and promote market certainty for manufacturers, NAECA also "made it more difficult for states to obtain waivers of preemption [under EPCA] for more stringent state efficiency standards." *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 500; H.R. Rep. No. 100-11, at 24 (1987).

**B.     Congress ensured uniformity by preempting states from implementing performance standards for covered products, as measured by carefully prescribed testing procedures.**

EPCA expressly preempts "any state or local regulation concerning the energy efficiency or energy use of" a covered product subject to federal energy efficiency standards. 42 U.S.C. §§ 6297(c), 6316(b)(2)(A).[8] Based on the plain language of the Act and the well-documented intent of Congress, EPCA sets standards that appliance manufacturers must meet when designing covered products that will be sold in the national marketplace. But EPCA does not preempt state and local regulations unless they concern the "energy efficiency" or "energy use" of a covered product—that is, unless they establish (directly or otherwise) an "energy conservation standard" for an appliance. *See Ass'n of Contracting Plumbers of the City of New York., Inc. v. City of New York*, 180 F.4th 434, 453(2d Cir. 2026).

---

[8] EPCA applies similar, and often identical, policies to industrial equipment. *See, e.g.*, 42 U.S.C. § 6311. This brief will refer to EPCA's consumer provisions, but the same interpretations apply to the corresponding industrial provisions.

EPCA's definitions of the terms "energy efficiency" and "energy use" reflect Congress' intent to narrowly preempt only state and local regulations that impose appliance performance standards that are more or less stringent than those set at the federal level. EPCA defines "energy efficiency" to mean "the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with test procedures under section 6293 of this title." 42 U.S.C. § 6291(5). "[E]nergy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title." *Id.* § 6291(4). Section 6293, in turn, prescribes "test procedures" that "measure" product performance "during a representative average use cycle or period of use" under controlled conditions.[9] *Id.* § 6293(b)(3). Applying EPCA's definitions, a "regulation concern[s]" the "energy use" of a "covered product" when it concerns the typical quantity of energy a product is designed to consume under carefully prescribed testing conditions. *Id.* §§ 6293(b)(3), 6297(c).

---

[9] EPCA's focus on the energy used by a covered product under carefully prescribed test procedures is underscored by the DOE's allegations in a recent EPCA enforcement case alleging violations of EPCA's requirement to certify a covered product's compliance with DOE energy conservation standards before distributing a covered product in commerce. *See* Compl. ¶¶ 21-22, 27, *U.S. Dep't of Energy v. Friedrich Air Conditioning, LLC*, No. 26-CV-00220, (D. Del. Mar. 3, 2026) ECF No. 1.

EPCA's incorporation of statutorily prescribed test procedures and its focus on the "point of use" in defining these key terms "unmistakably indicates the statute's chosen scope for regulating an appliance's consumption of energy." *Ass'n of Contracting Plumbers*, 180 F.4th at 451. A covered product's "point of use" does not refer to a physical place like a kitchen, garage, or office breakroom; rather, it refers to the technical method of measuring a product's "energy consumption" level (i.e., "site energy") without adjusting for energy lost in generating, transmitting, or distributing that energy (i.e., "source energy"). *Id.* at 451-453; *see Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1123-25 (9th Cir. 2024) (Friedland, J., dissenting from the denial of rehearing en banc); *Nat'l Ass'n of Home Builders of the U.S. v. Dist. of Columbia,* No. 24-CV-02942, 2026 WL 837674, at *7-8 (D.D.C. Mar. 26, 2026). Accordingly, both "energy efficiency" and "energy use" constitute a fixed, pre-market, representative measure of how much energy a product typically consumes under test conditions—not how much energy a product actually consumes when a consumer operates it in their home or business. *See* 42 U.S.C. § 6291(4), (5). Because EPCA regulates only covered products' performance under specified testing conditions, it leaves states free to decide how to regulate the characteristics and effects of covered products when used by consumers, so long as it does so without respect to the products' energy performance under those pre-market testing conditions.

**C.** **EPCA's legislative history and DOE's long-held interpretation of EPCA confirm the preemption provision is narrowly focused on appliance performance standards.**

As originally enacted in 1975, EPCA preempted "any energy efficiency standard or similar requirement with respect to energy efficiency or energy use of a covered product." *See* Energy Policy and Conservation Act, Pub. L. No. 94-163, § 327(a)(2), 89 Stat. 871, 926–27 (1975). The 1978 amendments made only minor changes to the preemption provision. National Energy Conservation Policy Act, Pub. L. No. 95-619, § 424(b), 92 Stat. 3206, 3264 (1978) (changing "similar requirement" to "other requirement"). Both the 1975 and 1978 versions of the preemption provision illustrate that "Congress meant to preempt only 'energy conservation standards' and the like.'" *Ass'n of Contracting Plumbers*, 180 F.4th at 448.

This interpretation of EPCA's preemption provision as focused on appliance energy performance is consistent with DOE's long-standing view that EPCA preempts only a narrow subset of state appliance energy regulations applicable to covered products. *See id.* at 449-450. (recognizing that DOE has "continued to interpret the preemption provision" in this manner). In 1982, DOE endorsed that interpretation of EPCA's preemption provision, advising that "only State regulations that are appliance efficiency standards" or that "establish[] the energy efficiency of a particular appliance" were preempted, not "regulations that have only a peripheral effect on the energy efficiency of a covered product." 47 Fed. Reg. 14424, 14456

(Apr. 2, 1982). DOE further explained that EPCA would preempt, for example, a "[p]rohibition of hook-ups for appliances with less than a certain efficiency." 47 Fed. Reg. 57198, 57215 (Dec. 22, 1982). But a complete prohibition on installing a covered product in new buildings would not be preempted. *See id.* ("Prohibition against placing oversized furnaces and air conditioners in new buildings, would not be subject to preemption.").

When Congress amended EPCA by passing NAECA in 1987, it did not expand the scope of EPCA's preemptive effect; instead, NAECA "follow[ed] substantially the preemption requirements in [then] current EPCA" by "continu[ing] the basic concept of preempting State energy efficiency standards," H.R. Rep. No. 100-11, at 23-24, "as provided under current law," S. Rep. No. 100-6, at 9. In short, NAECA did not broaden the preemption clause: it simply reinforced it. *See Ass'n of Contracting Plumbers*, 180 F.4th at 449. Congress's deliberate choice to maintain the status quo in NAECA reinforces EPCA's narrow preemptive scope. *See Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) ("When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' this Court generally presumes the new provision should be understood to work in harmony with what has come before." (quoting *Haig v. Agee*, 453 U.S. 280, 297-98 (1981))).

In the years since NAECA's enactment, DOE has continued to "interpret[] 'regulation concerning energy use' to be equivalent to 'energy conservation

standard,'" and has emphasized that the preemption provision's title ("General rule of preemption for energy conservation standards when Federal standard becomes effective for product") "further clarifies that this section addresses energy conservation standards." 75 Fed. Reg. 59470, 59530 (Sept. 27, 2010); *see also, e.g.*, 89 Fed. Reg. 28856, 28865 (Apr. 19, 2024); 85 Fed. Reg. 30878, 30879 (May 21, 2020); 71 Fed. Reg. 12634, 12635 (Mar. 13, 2006); *see also* 10 C.F.R. § 430.33(a). More recently, DOE has made clear that EPCA does not preempt laws that prohibit gas appliances, explaining that such laws do not undermine EPCA.[10] Although the United States has recently changed its position,[11] DOE's prior, longstanding, and consistent interpretation of EPCA preemption undermines the persuasive value of the United States' recent course reversal. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 & n.24 (2005) (deeming express preemption claim "particularly dubious given that just five years ago the United States advocated" a contrary "interpretation" and noted a "change in view" only in an amicus brief); *see also Wyeth v. Levine*, 555 U.S. 555, 577 (2009) ("The weight we accord the agency's

---

[10] Br. for the U.S. 8-9, 19-21, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. Feb. 2, 2022), ECF No. 33, 2022 WL 433159; Br. for the U.S. in Supp. of Pet. for Reh'g 7-13, *Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94; U.S. Statement of Interest 4-6, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-CV-3024 (D. Md. Jan. 17, 2025), ECF No. 30, *withdrawn*, ECF No. 39 (D. Md. March 19, 2025).

[11] *See, e.g.*, Br. for the U.S., *Nat'l Ass'n of Home Builders v. Montgomery Cnty*, No. 26-1449 (4th Cir. June 2026).

explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness.").

> **D.** **EPCA does not preempt Maryland's law because Maryland's law does not concern the energy efficiency or energy use of covered products.**

Congress' use of the word "concerning" does not expand EPCA's preemptive scope beyond a covered appliance's pre-market, lab-tested energy efficiency to include state and local regulations with indirect, remote, and tenuous relationships to appliance energy consumption. Such an application would result in an interpretation of EPCA that ignores the technical meaning of its defined terms and creates an unfettered right that Congress did not intend—allowing consumers to use any covered appliances however and whenever they choose regardless of other considerations such as safety and fire risk. *See Ass'n of Contracting Plumbers*, 180 F.4th at 450.

EPCA does not define the term "concerning," but even assuming it means "relating to," it does "not endlessly stretch the scope of preemption provisions" or permit "an uncritical literalism that would make pre-emption turn on infinite connections." *Id.* at 442 (internal quotation marks omitted); *see N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). As the district court correctly noted, "the breadth of the words 'related to' does not mean the sky is the limit." *Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain*, 828 F. Supp.

3d 617, 630 (D. Md. 2026) (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)). A state law "relates to" a particular subject matter if the law has "a connection with, or reference to" the subject matter. *Ass'n of Contracting Plumbers*, 180 F.4th at 441 (internal quotation marks omitted).

As the district court correctly found, Maryland's BEPS do not "act immediately" on covered products and do not have a sufficient "connection with" the energy efficiency or use that manufacturers design their product to achieve. *McIlwain*, 828 F. Supp. 3d at 632 (citing to *Rutledge v. Pharmaceutical Care Management Association*, 592 U.S. 80, 88 (2020). Rather, they regulate building emissions as applied to the overall building structure and do not impose, directly or indirectly, more stringent energy efficiency requirements on any covered products or impact the design, production, or marketing of a covered product's energy efficiency or use. Thus, like other building regulations, Maryland's BEPS have no legally relevant relation to appliance performance standards and do not impact an appliance's consumption of energy under carefully prescribed testing standards.

In sum, the district court correctly agreed with Maryland that building performance standards' connection to the energy use and energy efficiency of covered products, as those terms are defined in EPCA, "is too indirect, remote, and tenuous to support preemption." *Id*. at 630. Indeed, the district court's decision is

consistent with the majority of courts that have considered the scope of EPCA's

preemption clause and its applicability to similar regulations.[12]

**II. EPCA's narrow preemption provision carefully balances the need for uniform appliance performance standards with Congress's desire to preserve and encourage states' ability to exercise their traditional police powers.**

Our federalist system leaves most policymaking powers to states and

localities, as they are closest to the people. *Gregory v. Ashcroft*, 501 U.S. 452, 457-

58 (1991). That includes the powers to protect the health and safety of their residents,

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996), enact building codes, *Pennell v.*

*City of San Jose*, 485 U.S. 1, 12 (1988), and regulate gas distribution, *Oneok, Inc. v.*

*Learjet, Inc.*, 575 U.S. 373, 378 (2015).[13] Police powers "extend[] to all matters

---

[12] A growing consensus among courts outside of the Ninth Circuit have adopted the interpretation of EPCA's preemptive scope that Amici outline here. *See Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, 180 F.4th 434, 453 (2d Cir. 2026) (affirming *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, No. 23-CV-11292 (RA), 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) and *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 310 (N.D.N.Y. 2025)); *Nat'l Ass'n of Home Builders of the U.S. v. Montgomery Cnty.*, No. 8:24-CV-03024, 2026 WL 817322, at *7 (D. Md. Mar. 25, 2026); *Nat'l Ass'n of Home Builders of the U.S. v. Dist. of Columbia*, No. 24-CV-02942, 2026 WL 837674, at *12 (D.D.C. Mar. 26, 2026).

[13] Congress has recognized states' primacy in other relevant spheres. Under the Clean Air Act, "air pollution prevention (that is, the reduction or elimination, through any measures, of the amount of pollutants produced or created at the source) and air pollution control at its source is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3).

affecting the public health or the public morals." *Yawn v. Dorchester Cnty.*, 1 F.4th 191, 194 (4th Cir. 2021) (quoting *Stone v. Mississippi*, 101 U.S. 814, 818, (1879)).

If a federal act, such as EPCA, contains a preemption clause, the historic police powers of the states are not to be superseded by the federal act unless that was "the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 475. Here, Congress expressed no intent for EPCA to supersede state police powers beyond the plain language of the preemption clause.

### A. EPCA encourages state and local regulation of buildings to improve the efficient use of energy and reduce emissions.

EPCA has always coexisted with extensive state regulation of buildings' energy consumption.[14] Although EPCA is a component of a national energy policy, Congress declared in EPCA its support for "the development and implementation by States of laws, policies, programs, and procedures to conserve and to improve efficiency in the use of energy." Energy Policy and Conservation Act, Pub. L. No. 94-163, § 361(a)(1), 89 Stat. 871, 932 (1975). Congress further commanded that "all sectors of our Nation's economy must begin immediately to significantly reduce the demand for nonrenewable energy resources such as oil and natural gas." National

---

[14] As Maryland explains, the ability of states and localities to address emissions from buildings does not depend on EPCA's building code exception. *See* Resp. Br. 42-46. Moreover, EPCA does not preempt building codes that allow flexibility in how to comply, by, among other things, not mandating the use of appliances that exceed federal energy performance standards. *Building Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1145 (9th Cir. 2012).

Energy Conservation Policy Act, Pub. L. No. 95-619, § 102(a)(3), 92 Stat. 3206, 3209 (1978) (amending EPCA).

Congress further demonstrated its support of state and local action in this area through numerous other provisions in EPCA. These include: providing financial and technical support for the creation of energy conservation plans to reduce energy consumption and improve energy efficiency, 42 U.S.C. §§ 6321-6325, which plans may include "programs to promote energy efficiency in residential housing" and "programs for the development of building retrofit standards and regulations," *id.* § 6322(d)(8), (14); funding renewable energy measures for buildings built before 1976 that "involve changing, in whole or in part, the fuel or source of the energy used" for the building "from a depletable source of energy to a nondepletable source of energy," *id.* §§ 6321(c)(7)(A) & 6325(e); granting federal financial assistance to states if "[DOE] determines that a State has demonstrated a commitment to improving the energy efficiency of buildings," *id.* § 6323(e); and providing financial and technical support for state and local plans to reduce fossil fuel dependency and energy consumption of public schools, public hospitals, buildings owned by local governments, and public care institutions, *id.* §§ 6371-6371k, 6372-6372i.

EPCA's preemption provision must be read in the context of these many other statutory directives supporting state and local efforts to address building-wide energy efficiency and emission reductions.

**B.** **Related statutes reinforce states' exercise of their traditional authority to adopt environmental and energy regulations.**

Next, Congress's post-EPCA enactments reinforce the point by allowing states and localities to adopt their own environmental and energy policies so long as they do not infringe on design decisions about energy efficiency and use and federally established energy consumption standards for covered appliances as determined under prescribed testing conditions. In 1976, for instance, Congress directed DOE to help states develop building codes with an eye toward "stimulation of use of nondepletable sources of energy." Energy Conservation Standards for New Buildings Act, Pub. L. No. 94-385, § 310, 90 Stat. 1125, 1149 (1976). Congress recognized that "State and local building codes . . . can provide an existing means by which to assure, . . . with a minimum of Federal interference in State and local transactions, that newly constructed buildings contain adequate energy conservation features." 42 U.S.C. § 6831(4). And Congress continues to provide financial and technical support for states to create and implement building codes that conserve energy. *Id.* §§ 6833, 6836, 6838.

More recently, Congress, through the Inflation Reduction Act (IRA), directed DOE to issue grants to states and localities—pursuant to its authority under EPCA— to adopt "building energy code[s]" that "meet[] or exceed[] the zero energy provisions in the 2021 International Energy Conservation Code [IECC]." Inflation Reduction Act of 2022, Pub. L. No. 117-169, §§ 50131(a)(2), (c)(1), 136 Stat. 1818,

17

2042 (2022) (citing 42 U.S.C. §§ 6321-6326). According to DOE, "[a]pproaches to comply with the IECC requirements include all-electric buildings." U.S. Statement of Interest 4-6, Br. of Montgomery Cnty. at 9 in *Nat'l Ass'n of Home Builders v. Montgomery Cnty.*, No. 24-CV-3024 (D. Md. Jan. 17, 2025), ECF No. 30, *withdrawn*, ECF No. 39 (Mar. 19, 2025).

When Congress "encourage[s]" state policies by providing "federal funding" or "technical assistance," "it just makes good sense to reject" a broad interpretation of a preemption provision that would nullify those same federally promoted and endorsed state policies. *Travelers*, 514 U.S. at 665-67; *see CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014) (rejecting preemption where federal law left "many areas of state law untouched"); *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 421 (1973) ("Where coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one."). Congress's continued efforts to support and preserve complementary state building energy codes—including codes that shift buildings' reliance on fossil fuels to renewable energy—makes plain that EPCA does not "sweep[] broadly" and "create a national, comprehensive energy policy" that would support preempting Maryland's BEPS. Appellants' Br. at 3, 11.

**III. Appellants' preemption theory would upset EPCA's balancing of national and state interests and lead to boundless preemption.**

Appellants argue that EPCA should preempt states from regulating "the entire regulatory sphere" of energy use—in the colloquial sense—of covered appliances and preclude states from regulating *when* or *where* a covered product is used, in addition to how much energy the product consumes when tested at point of use. Appellants' Br. at 42. This argument rests on a fundamental misreading of EPCA that would upset the delicate balance of federal and state regulatory authority and lead to far-reaching consequences never intended by Congress.

State and local governments are closer to the needs of the public they serve than the federal government, and therefore, must remain responsive to protecting the public health, welfare, and safety of their residents. Adopting Appellants' overly expansive interpretation of EPCA's preemption provision would interfere with states' abilities to adopt a broad range of laws that are properly within their authority to protect public welfare and ensure consumer safety. As this Court recently held, federal regulation and preemption of state regulation "[does] not create a right to utilize any particular" regulated product or prevent states from banning such products entirely. *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 276 (4th Cir. 2025).

The implications of Appellants' broad view demonstrate the potentially boundless consequences of adopting their interpretation. *See Ass'n of Contracting Plumbers*, 180 F.4th at 450. For example, because EPCA applies to refrigerated

19

beverage vending machines, 10 C.F.R. § 431.292, an ordinance banning soda machines in schools to address public health concerns could be preempted. Likewise, a rule limiting the use of washers and dryers in college student housing between the hours of 3am and 6am to reduce noise could be preempted based on EPCA's coverage of those appliances, even though nothing in such a rule relates to the performance standard washers and dryers must be manufactured to meet. Similarly, a broad interpretation could call into question state laws banning space heaters powered by fossil fuels, despite their deadly fire risks and the possibility of carbon-monoxide poisoning from their use, as well as a whole swath of zoning laws that restrict the use of industrial-grade appliances in residential areas or otherwise limit whether owners may install appliances. *See, e.g.*, *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 421 (4th Cir. 2013) ("[T]he power to impose a zoning requirement includes the power to preclude any proposed usage of the zoned area that cannot.").

Moreover, some appliances subject to EPCA may not currently have a federal standard under the Act, such as indoor kerosene heaters, lawn mowers, and other appliances regulated by states and localities. Regardless, the canon against absurd results does not solely consider whether a result will come about the day after a court issues its decision. *See Ass'n of Contracting Plumbers*, 180 F.4th at 450 n.14 (citing *In re Brandt-Airflex Corp.*, 843 F.2d 90, 96 (2d Cir. 1988)). DOE could impose a

standard for any number of currently non-covered appliances whenever it chooses, and under Appellants' theory, those standards would immediately displace any number of state and local laws aimed at public safety and welfare. There is no evidence that Congress intended to give such sweeping preemptive power to DOE via EPCA's preemption clause.

In short, Appellants' position would create a right to use covered appliances that may be exercised anytime, anywhere, and by any consumer. That would plainly stretch EPCA far beyond its language and Congress's intent. *See id.* ("We think it far-fetched to conclude that Congress imagined such consequences, let alone *intended* those consequences, when it drafted a preemption provision in a statute that by-and-large imposes energy conservation standards.")(emphasis in original).

If Appellants' reading were accepted, any regulation even remotely implicating a covered appliance could arguably be preempted. And Appellants' attempt to support their position with the decision in *Metropolitan Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010), by contending that the Maryland law is a mere "proxy" for regulating the energy efficiency of covered appliances is similarly misplaced. Appellants' Br. at 50-51. As the Second Circuit recently explained in rejecting a similar challenge to New York State and New York City laws, "the challenged laws [do not] operate as a 'proxy' for 'energy use.' A 'proxy' requires an 'equivalency,' but there is no 'equivalency' between the type of

energy an appliance uses and that appliance's 'energy use.'" *Ass'n of Contracting Plumbers*, 180 F.4th at 442.

Appellants appear to acknowledge that an expansive interpretation with "infinite reach" is not appropriate, but they fail to provide any limiting principle that would cabin their reading of EPCA. Instead, they assert that this is not a close case. Appellants' Br. at 23. But the Court's "task is to 'identify the domain expressly pre-empted'" by EPCA. *Dan's City*, 569 U.S. at 260 (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). Appellants' conclusory evasion fails to provide the "workable standards" necessary to guide courts in reviewing and states in formulating policies in compliance with federal law, and it should be rejected. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016).

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted August 5, 2026,

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Jaclyn M. Calicchio*
JACLYN M. CALICCHIO
DAVID BANAS
W. CORY HALLER
CARRIE NOTEBOOM
Assistant Attorneys General
Natural Resources and Environment Section
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: 720.508.6000
Email: Jackie.calicchio@coag.gov
David.banas@coag.gov
Cory.haller@coag.gov
Carrie.noteboom@coag.gov

On Behalf of:

WILLIAM TONG
*Attorney General*
State of Connecticut

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

BRIAN L. SCHWALB
*Attorney General*
District of Columbia

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

KWAME RAOUL
*Attorney General*
State of Illinois

ANDREA CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

DANA NESSEL
*Attorney General*
State of Michigan

KEITH ELLISON
*Attorney General*
State of Minnesota

JENNIFER DAVENPORT
*Attorney General*
State of New Jersey

RAÚL TORREZ
*Attorney General*
State of New Mexico

LETITIA JAMES
*Attorney General*
State of New York

DAN RAYFIELD
*Attorney General*
State of Oregon

CHARITY R. CLARK
*Attorney General*
State of Vermont

## <u>CERTIFICATE OF COMPLIANCE</u>

Under Federal Rule of Appellate Procedure 32(g)(1), I certify that:

This brief complies with Rule 29(a)(5)'s type-volume limitation because it contains 5,124 words, as determined by the most recent version of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with Rule 32(a)(5)'s typeface requirements and Rule 32(a)(6)'s type-style requirements because it has been prepared in a proportionately spaced typeface using the latest word processing applications.

*/s/ Jaclyn M. Calicchio*
Jaclyn M. Calicchio