**No. 26-1552**

IN THE

# United States Court of Appeals for the Fourth Circuit

MARYLAND BUILDING INDUSTRY ASSOCIATION, INC., *et al.*,

*Plaintiff-Appellants*,

*v*.

SERENA COLEMAN MCILWAIN, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF THE MARYLAND DEPARTMENT OF THE ENVIRONMENT,

*Defendant-Appellee*.

On Appeal from the U.S. District Court for the District of Maryland, No. 8:25-cv-00113-DLB

**REPLY BRIEF OF APPELLANTS**

Scott Novak
BAKER BOTTS L.L.P.
700 K Street NW
Washington, D.C. 20001
(202) 304-5099
scott.novak@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Daniel B. Rankin
BAKER BOTTS L.L.P.
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for Appellants*

# TABLE OF CONTENTS


Table of Contents .................................................................................... i

Table of Authorities.................................................................................. iii

Argument.....................................................................................................1

I. The Maryland BEPS concern the energy use and energy efficiency of EPCA-covered gas appliances. ...........................................................1

II. The State cannot create loopholes to escape EPCA preemption. ....................2

A. Alternative compliance mechanisms do not immunize the Maryland BEPS from preemption. ....................................................3

B. Emissions regulations are not exempted from EPCA preemption. ........................................................................................6

III. The remainder of the State's arguments do not save the Maryland BEPS from preemption. ......................................................................10

A. The preemption provision's use of the broadening term "concerning" confirms that it extends to cover the Maryland BEPS.........................................................................................10

B. EPCA's building code exception and other provisions support preemption of the Maryland BEPS. ..............................................13

C. To the extent it matters, the State misinterprets "energy use" and "point of use." ...................................................................17

D. EPCA's legislative history reflects its broad preemptive scope..........19

E. This case does not implicate the State's parade of horribles..............21

F. The State's facial-challenge point rests on its misunderstanding of the preemption question. .........................................................23

IV. *Amici*'s arguments do not alter the result...................................................25

Certificate of Compliance ..........................................................................28

Certificate of Service ....................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Auto. Mfrs. Ass'n v. Cahill*,
152 F.3d 196 (2d Cir. 1998) ........................................................ 12

*Bates v. Dow Agrosciences, LLC*,
544 U.S. 431 (2005) ........................................................ 5

*Cal. Div. of Lab. Stds. Enf't v. Dillingham Constr., N.A., Inc.*,
519 U.S. 316 (1997) ........................................................ 11

*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ........................................................ 19, 20, 22

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) ........................................................ 24

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) ........................................................ 14

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004) ........................................................ 21

*Env't Def. v. Duke Energy Corp.*,
549 U.S. 561 (2007) ........................................................ 18

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) ........................................................ 7

*Holland v. Burlington Indus., Inc.*,
772 F.2d 1140 (4th Cir. 1985) ........................................................ 23

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133 (1990) ........................................................ 12

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ........................................................ 24

*Kimbrough v. United States*,
552 U.S. 85 (2007)....................................................................................15

*Lamar, Archer & Cofrin, LLP v. Appling*,
584 U.S. 709 (2018)..................................................................................10

*Lebron v. Rumsfeld*,
670 F.3d 540 (4th Cir. 2012) ....................................................................22

*Massachusetts v. EPA*,
549 U.S. 497 (2007)....................................................................................9

*Metro. Taxicab Bd. of Trade v. City of New York*,
615 F.3d 152 (2d Cir. 2010) ...............................................................12, 13

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)..................................................................................12

*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013)....................................................................................3

*N. Natural Gas Co. v. State Corp. Comm'n*,
372 U.S. 84 (1963)......................................................................................8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012)..................................................................................21

*Nat'l Meat Ass'n v. Brown*,
599 F.3d 1093 (9th Cir. 2010) ....................................................................5

*Nat'l Meat Ass'n v. Harris*,
565 U.S. 452 (2012)...............................................................................4, 5

*Pharm. Coal. for Patient Access v. United States*,
126 F.4th 947 (4th Cir. 2025) ...................................................................18

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)..................................................................................16

*PPL EnergyPlus, LLC v. Nazarian*,
753 F.3d 467 (4th Cir. 2014) ......................................................................8

*Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*,
No. 25-5129, 2026 WL 1912093 (9th Cir. July 2, 2026) ...............................9, 10

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008)...........................................................................11, 12, 23

*Schneidewind v. ANR Pipeline Co.*,
485 U.S. 293 (1988)..................................................................................8

*United States v. Price*,
361 U.S. 304 (1960)..................................................................................15

*United States v. Spirito*,
36 F.4th 191 (4th Cir. 2022) .....................................................................15

*United States v. Sup. Ct. of New Mexico*,
839 F.3d 888 (10th Cir. 2016) ...................................................................24

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014)..................................................................................18

*Wos v. E.M.A. ex rel. Johnson*,
568 U.S. 627 (2013)...........................................................................6, 7, 13

**STATUTES AND REGULATIONS**

42 U.S.C. § 6291 ..........................................................................1, 20, 25

42 U.S.C. § 6295 ..................................................................................15

42 U.S.C. § 6297 ..................................................... 2, 3, 5, 14, 15, 20, 26

42 U.S.C. § 6325 ..................................................................................16

42 U.S.C. § 6834 ..............................................................................16, 18

49 U.S.C. § 32919 ..................................................................................9

10 C.F.R. § 430.32 ................................................................................25

76 Fed. Reg. 51,281 (Aug. 18, 2011).........................................................19

COMAR 26.28.03.02A ..........................................................................1, 2

**OTHER AUTHORITIES**

Maryland Department of the Environment, *Building Energy Performance Standards: What You Need to Know* (July 1, 2024) ........................................ 10

Oxford English Dictionary Online (2022) ........................................................ 19

## ARGUMENT

### I. The Maryland BEPS concern the energy use and energy efficiency of EPCA-covered gas appliances.

Nothing in the State's brief undermines the straightforward case for why EPCA preempts the Maryland BEPS. All agree that EPCA-covered gas appliances emit some level of carbon dioxide or other gases that count as CO2e under the Maryland BEPS. The Maryland BEPS regulate those appliances' energy use and energy efficiency by restricting, and ultimately prohibiting, those natural byproducts of their use of gas energy. And that is true even granting the State its overly narrow interpretation of terms like "energy use" and "point of use." EPCA preempts the Maryland BEPS even then.

The preemption issue comes into clearest focus when the Maryland BEPS' declining net kg CO2e/sq. ft. requirements reach zero, as they will in 2040. COMAR 26.28.03.02A. At that point, the Maryland BEPS will ban the use of EPCA-covered gas appliances because they will prohibit such appliances from using any gas energy whatsoever. Framed in terms of an energy conservation standard, the Maryland BEPS will set the maximum "energy use" of EPCA-covered gas appliances at zero, as they will prohibit any appliance that is designed to use more than zero gas energy. That effectively sets a competing energy conservation standard of 0 kBtu/year for gas appliances. *See* 42 U.S.C. § 6291(6) (defining "energy conservation standard"

as "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use").

The Maryland BEPS also will be preempted during the period in which they allow a positive net kg CO2e/sq. ft. value. COMAR 26.28.03.02A. After all, there is no practical difference between an insignificant yet positive net kg CO2e/sq. ft. limit and one set at zero. If the Maryland BEPS set a .00001 net kg CO2e/sq. ft. limit, that would operate as an effective limit of zero and would meet the same preemption fate. The difference between that and other positive net kg CO2e/sq. ft. limits is only one of degree. All such limits cap the amount of energy gas appliances can use and thereby restrict and penalize their energy use. What is more, the restriction scales with the appliance's energy use and energy efficiency ratings, since less efficient appliances combust more gas—and thus emit more CO2e—for the same amount of output. Those effects on gas appliances demonstrate that the Maryland BEPS "concern[] the energy efficiency [or] energy use" of EPCA-covered products. 42 U.S.C. § 6297(c).

## II. The State cannot create loopholes to escape EPCA preemption.

The State attempts to manufacture two loopholes to avoid preemption. It claims that even if the Maryland BEPS otherwise would be preempted, the presence of other options—namely, the ability to exceed the net CO2e limits and pay an alternative compliance fee instead or to still use gas appliances while pursuing costly

compliance mechanisms—takes EPCA preemption off the table. Then the State asserts that because the Maryland BEPS are phrased in terms of emissions rather than energy, they fall outside of EPCA's preemptive scope. Neither of these theories finds any support in EPCA's text, and either would make EPCA preemption trivially easy to evade. Simply put, the State's imagined get-out-of-preemption-free cards do not exist.

### A. Alternative compliance mechanisms do not immunize the Maryland BEPS from preemption.

As Plaintiffs have discussed in detail, the district court provided a blueprint for evading EPCA preemption. Opening.Br.40-45. Under its reasoning, regulations that "concern[] the energy efficiency [or] energy use" of covered products can avoid preemption merely by including an alternative compliance mechanism that consists of making a monetary outlay. *Id.* The State leans into that approach. It insists that the Maryland BEPS cannot be preempted because "owners can use gas-powered products as long as they capture those products' emissions or offset them with compliance fees." State.Br.42; *see also id.* at 22 ("Besides replacing or retrofitting gas-fueled appliances, they can modify their buildings to reduce emissions, engage in carbon capture, or pay alternative compliance fees."); *id.* at 48 ("The BEPS regulation . . . provides ample opportunity for building owners to comply without switching from natural gas."). But the Supreme Court has rejected essentially that same argument in the impossibility-preemption context. *See Mut. Pharm. Co. v.*

*Bartlett*, 570 U.S. 472, 487 n.3 (2013) (rejecting argument that the regulated party's ability to "escape liability 'either by not doing business in the relevant State or by paying the state penalty, say damages, for failing to comply with, as here, a state-law tort standard'" precluded impossibility preemption). Applying that reasoning here, the existence of costly alternative compliance paths does not change the character of the Maryland BEPS as regulations "concerning the energy efficiency [or] energy use" of EPCA-covered appliances.

Consider also what the State's view would mean for EPCA preemption. States would have free rein to regulate EPCA-covered products in whatever way they desired as long as regulated parties could buy their way out of that compliance path. As one example, a state could promulgate classic energy conservation standards that apply directly to manufacturers, provided that it waived those standards for anyone who pays an alternative compliance fee. That would spell the effective end of EPCA preemption. States could regulate as they pleased regarding the energy efficiency and energy use of EPCA-covered appliances and then just append a costly alternative compliance path to immunize those regulations from preemption. "That would make a mockery of [EPCA's] preemption provision." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 464 (2012).

The district court nevertheless concluded that the Maryland BEPS escape preemption because they "merely discourage gas usage." JA37. The State echoes

this point, arguing that "the Supreme Court has distinguished between regulations that mandate particular conduct in a preempted area and those that merely yield incentives to act in that area." State.Br.23 (citing *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 433 (2005), and *Harris*, 565 U.S. 452). But the federal statutes in both *Bates* and *Harris* expressly permitted "broad" concurrent state regulation, *Bates*, 544 U.S. at 446; *Nat'l Meat Ass'n v. Brown*, 599 F.3d 1093, 1098 (9th Cir. 2010), and preempted only state "requirements," which the Court sensibly construed to not encompass "inducements" or "incentives," *Bates*, 544 U.S. at 445-46; *Harris*, 565 U.S. at 463-64. Neither can be said of EPCA, which broadly preempts "regulations concerning" energy use and efficiency and does not condone "broad" concurrent state regulation in that sphere. *See* 42 U.S.C. § 6297(c).

Indeed, in terms of EPCA preemption, there is no principled basis on which to distinguish between a ban on gas appliances, on the one hand, and a regulation that makes them costlier to use on the other. Either way, the Maryland BEPS "concern" the "energy use" and "energy efficiency" of EPCA-covered gas appliances because they pressure building owners to cease using appliances that use gas energy or to use more efficient gas appliances in order to meet the declining CO2e emissions limits.

Empty semantics do not matter either. *Contra* State.Br.47. Whether the regulated party's monetary outlay is labeled a "fee," a "penalty," or an "elective

compliance path," the effect is the same. *Cf. Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013) ("Pre-emption is not a matter of semantics."). The regulation exerts economic pressure on EPCA-covered products based on their energy efficiency and energy use. That qualifies as a regulation "concerning the energy efficiency [or] energy use" of such products.

**B. Emissions regulations are not exempted from EPCA preemption.**

The State tries to create a separate loophole, this time claiming that "[p]ollution control measures . . . fall outside EPCA's preemptive scope." State.Br.14; *see also* State.Br.21 ("[N]othing in EPCA's text or history suggests that its purpose encompasses emissions regulation."). So, according to the State, states can issue whatever regulations they want concerning EPCA-covered products, so long as the regulations take the form of emissions limits. That would render EPCA preemption illusory for covered gas appliances, as states could recast their energy use and energy efficiency regulations in terms of emissions regulations on the necessary byproducts of gas combustion.

Because gas appliances emit CO2e in direct proportion to their energy use—*i.e.*, how much gas they combust—it is a simple matter to translate an energy use standard into an emissions standard. For example, rather than set a 100 kBtu/year energy use standard on gas appliances, states could instead set a 5.3 kg CO2e/year emissions standard, since that is approximately the amount of CO2e that combustion

of 100 kBtu of gas produces. In terms of their operation and effect, there would be virtually no difference between those two standards. Yet in the State's view, EPCA would preempt the former but not the latter. That cannot be squared with the Supreme Court's instructions for a "proper [preemption] analysis," which "requires consideration of what the state law in fact does" and its "operation and effect." *Wos*, 568 U.S. at 636-37. Whether phrased in terms of energy usage or the necessary byproducts of that energy usage, the standard's "operation and effect" would "concern[] the energy efficiency [or] energy use" of EPCA-covered gas appliances.

As for the Maryland BEPS specifically, the State does not dispute that CO2e operates as a proxy for gas appliances' energy use and energy efficiency.[1] But that does not matter, the State insists, because their "aim is to control pollution, rather than to conserve energy." State.Br.41-42. The State even goes so far as to say that "it is immaterial whether . . . the BEPS regulation results in a ban on certain EPCA-covered products by effectively setting an energy conservation standard of 0 kBtu/year for those products" because their distinct purpose takes them out of EPCA's preemptive scope. State.Br.42. But, again, the preemption inquiry turns on the state law's "operation and effect," *Wos*, 568 U.S. at 636, not on its aim or purpose, *see Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992)

[1] To be clear, the State disputes the broader proxy point, but it does so only on the basis that "building owners have compliance options other than ceasing reliance on natural gas." State.Br.47; *see supra* § II.A (addressing that argument).

(“Whatever the purpose or purposes of the state law, pre-emption analysis cannot ignore the effect of the challenged state action on the pre-empted field.”). And as far as gas appliances are concerned, the Maryland BEPS’ net CO2e limits are virtually indistinguishable from net energy use limits in terms of their “operation and effect.”

The State responds in part by trying to distinguish the cases Plaintiffs cited in their opening brief as ones that “imposed direct requirements in areas regulated by federal law.” State.Br.24. But whether a regulation is “direct” or “indirect” has never been the dividing line between preempted and non-preempted state laws. *See, e.g.*, *PPL EnergyPlus, LLC v. Nazarian*, 753 F.3d 467, 475-76 (4th Cir. 2014) (“Even where state regulation operates within its own field, it may not intrude indirectly on areas of exclusive federal authority.” (quoting *Pub. Utils. Comm’n v. FERC*, 900 F.2d 269, 274 n.2 (D.C. Cir. 1990))), *aff’d sub nom. Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150 (2016). That means states like Maryland “are barred from relying on mere formal distinctions in ‘an attempt’ to evade preemption . . . .” *Id.* at 476 (quoting *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308 (1988)). So any “formal distinctions” that can be made between CO2e emissions and energy use and energy efficiency cannot save the Maryland BEPS from EPCA preemption, for, at best, the Maryland BEPS “indirectly achieve the same result” that EPCA prohibits. *Id.* at 475 (quoting *N. Natural Gas Co. v. State Corp. Comm’n*, 372 U.S. 84, 91 (1963)).

Lastly, the State cites two cases that deal with emissions in far different contexts and thus shed no light on the preemption question presented here. State.Br.21-22. *Massachusetts v. EPA*, 549 U.S. 497 (2007), concerned EPA's duties regarding the regulation of greenhouse gases from motor vehicles. *Id.* at 505. The Court's only reference to EPCA came in rejecting EPA's contention that such regulation would intrude upon the Department of Transportation's fuel economy mandate. *Id.* at 532. That holding concerned the allocation of authority between two federal agencies, *id.*, and thus had nothing to do with the EPCA preemption provision at issue here. Moreover, the fuel-economy-standards part of EPCA is in an entirely separate title and chapter with its own distinct preemption clause. *See* 49 U.S.C. § 32919. Thus, *Massachusetts* provides no relevant insight into EPCA's preemptive reach.

As for *Rinnai America Corp. v. South Coast Air Quality Management District*, No. 25-5129, 2026 WL 1912093 (9th Cir. July 2, 2026), the court grounded its holding there in the fact that the emissions standards at issue were part of the state's effort to comply with its Clean Air Act obligations: "[O]ur holding today merely recognizes that state and local regulators do not necessarily run afoul of EPCA preemption when they exercise their statutory duties under the [Clean Air Act] by enacting emissions standards for covered appliances." *Id.* at *12; *see also id.* at *6 ("EPCA's Preemptive Scope Does Not Cover State Appliance Emissions Standards

Enacted Pursuant to the CAA."). Here, in contrast, the Maryland BEPS were not enacted pursuant to any Clean Air Act obligations.[2] So even if *Rinnai* were correct—and there is much reason to think it is not, *see Rinnai*, 2026 WL 1912093, at *14-17 (Lee, J., dissenting)—it would not support the State's efforts here.

## III. The remainder of the State's arguments do not save the Maryland BEPS from preemption.

The State makes a number of other arguments in defense of the Maryland BEPS as well. None can save them from preemption.

### A. The preemption provision's use of the broadening term "concerning" confirms that it extends to cover the Maryland BEPS.

The State concedes that EPCA's use of the word "concerning" "extends" its preemptive scope "beyond regulations that purport to issue energy conservation standards." State.Br.18. It further agrees that "'concerning' means 'related to,'" that Congress intended to bring uniformity to the appliance market, and that "the objectives" of EPCA serve as a "guide to the scope of the state law that Congress understood would survive." State.Br.18-21 (quoting *Lamar, Archer & Cofrin, LLP*

[2] As the State's Department of the Environment has made clear, the Maryland BEPS "will not be submitted to the U.S. Environment Protection Agency (EPA) as part of Maryland SIP" (*i.e.*, a "State Implementation Plan" for Clean Air Act compliance). Maryland Department of the Environment, *Building Energy Performance Standards: What You Need to Know* (July 1, 2024), available at https://mde.maryland.gov/programs/regulations/air/Documents/BEPS/2024/Maryland%20BEPS%20Fact%20Sheet_July%202024.pdf.

*v. Appling*, 584 U.S. 709, 717-18 (2018), and *Cal. Div. of Lab. Stds. Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997), respectively).

Despite those admissions, the State nevertheless contends that the Maryland BEPS lack the requisite "connection with" EPCA-covered gas appliances' "energy use" and "energy efficiency" because they do "not require that appliances use less energy or operate more efficiently." State.Br.19, 22. This is wrong, for reasons that Plaintiffs have already explained. Opening.Br.48-51. To comply with the Maryland BEPS' declining net kg CO2e/sq. ft. emissions limits and avoid their costly alternative compliance paths, Plaintiffs and many others must curtail, and eventually cease altogether, their use of EPCA-covered gas appliances. They will likewise be forced to use more efficient gas appliances, as those will contribute less CO2e for the same amount of energy. All this will "have a significant impact" on, and thus have an impermissible "connection with," covered appliances' energy use and energy efficiency. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370-71 (2008). The fact that regulated entities can use a "combination of strategies" to comply with the BEPS does not obviate the problem. State.Br.22. It instead underscores why Congress deliberately broadened EPCA preemption with "concerning": to ensure that states cannot so easily circumvent the commands of EPCA through indirect regulations that achieve the same prohibited effect. *See supra* § II.A. A state cannot do by fee what EPCA forbids it to do by fiat.

The State further argues that cases like *Rowe* and *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), are distinguishable because the Maryland "BEPS regulation says *nothing* about the 'energy use' or 'energy efficiency' of covered products." State.Br.27. But preemption turns not on how a law is phrased, but rather on its effects. Specifically, the Supreme Court asks whether state regulations have an impermissible or forbidden *effect* on federal objectives. *Rowe*, 552 U.S. at 372; *Morales*, 504 U.S. at 388. Indeed, the Supreme Court has held that a state law can be "related to" a preempted subject matter even when "the law is not specifically designed to affect [the subject matter], or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). So even though the Maryland BEPS do not strictly speak in terms of kilowatt-hours or Btus, they nevertheless affect the energy use and energy efficiency of EPCA-covered gas appliances. *Cf. Am. Auto. Mfrs. Ass'n v. Cahill*, 152 F.3d 196, 200 (2d Cir. 1998) (holding that while a New York law requiring that a percentage of vehicle sales be "zero emission vehicles" did not "impose precise overall quantitative limits on levels of emissions," the Clean Air Act nevertheless preempted the sales requirement because the law was "in the nature of a command having a direct effect on the level of emissions").

The State's attempts to distinguish *Metropolitan Taxicab Board of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010), are similarly unpersuasive. The State contends that the Maryland BEPS are "nothing like the hybrid rule in *Metropolitan*

*Taxicab*" because they do "not distinguish between covered products based on their energy use or energy efficiency." State.Br.29. The State is right, of course, that the Maryland BEPS do not *expressly* distinguish between covered products' energy use and efficiency. But that is beside the point. "In a pre-emption case . . . a proper analysis requires consideration of what the state law in fact does." *Wos*, 568 U.S. at 637. Viewed through that lens, this case is an analogue to *Metropolitan Taxicab*. Just as the state's regulatory "proxy" penalized the use of taxis with lesser fuel efficiency taxis in *Metropolitan Taxicab*, 615 F.3d at 158, the Maryland BEPS' declining net CO2e limits penalize appliances that use gas energy, and particularly the less efficient ones.

### B. EPCA's building code exception and other provisions support preemption of the Maryland BEPS.

On the interpretive import of EPCA's building code exception, the State insists that whether the Maryland BEPS qualify for the exception is "immaterial" because they do not constitute regulations "concerning 'energy efficiency' or 'energy use' in the first place." State.Br.42-43. That misses the point. The building code exception provides insight into the reach of EPCA's preemption provision. Whether the law at issue would otherwise be preempted (as the Maryland BEPS would be) and thus needs the exception to escape preemption is a separate issue.

The State also asserts that the Maryland BEPS are "not part of a building code at all" and acts as if that takes them entirely out of EPCA's preempted sphere.

State.Br.44-46. EPCA, however, does not preempt *only* "building codes," but rather all "State regulation[s] concerning the energy efficiency [or] energy use . . . of [a] covered product." 42 U.S.C. § 6297(c). Building codes are just one example of the kind of regulations that can be preempted. Here, the Maryland BEPS essentially are a building code on steroids because they apply even to existing buildings built long ago. The fact that the State slapped a "BEPS" rather than "building code" label on those regulations should not matter because, in substance, they operate as building-level regulations concerning the energy efficiency and energy use of EPCA-covered appliances.

Additionally, Plaintiffs do not advance the discredited argument the petitioner did in *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013)—that "[b]ecause [the law] do[es] not fit within any exception to preemption, . . . [it] must be preempted." *Id.* at 264; *contra* State.Br.43-44. Rather, the key insight from the building code exception is that EPCA preemption must reach at least some building codes that satisfy all seven of the exception's requirements—or else the exception would serve no purpose. Opening.Br.29-33. That yields an EPCA preemption provision much broader than the State would like—one that extends to reach

building-level regulations concerning covered products' energy use and energy efficiency like the Maryland BEPS.[3]

Much like with the building code exception, the State also ascribes no relevance to provisions like 42 U.S.C. §§ 6297(d) and 6295(o)(4), which respectively require DOE to consider the costs, benefits, and burdens of state regulations for waiver purposes and to ensure that energy-conservation standards do not result in the unavailability of products. The State makes the unremarkable point that these provisions address things other than EPCA preemption specifically. State.Br.38-39. No disagreement there. Rather, Plaintiffs discuss these provisions because they serve as the relevant background context against which EPCA's preemption provision should be interpreted. *See United States v. Spirito*, 36 F.4th 191, 204 (4th Cir. 2022) (explaining that when interpreting statutes, "we must also consider the specific context in which that language is used, and the broader context of the statute as a whole" (internal quotation marks omitted)).

In this same vein, the State takes issue with Plaintiffs' prediction that if regulations like the Maryland BEPS are allowed to proliferate, the servicing, sale,

---

[3] *Amicus* PHLC argues that "Congress contemplated and rejected appliance neutrality in the context of EPCA's building code exception," PHLC.Br.25, but making any inference from legislative inaction is a dubious interpretive exercise, *see Kimbrough v. United States*, 552 U.S. 85, 106 (2007) ("we resist reading congressional intent into congressional inaction"), because it is impossible to tell whether "Congress thought the proposal unwise . . . or unnecessary" or anything else, *United States v. Price*, 361 U.S. 304, 312 (1960).

and marketing of gas appliances will become increasingly difficult and complex, and manufacturers will be forced to radically shift or add production lines—by redesigning and retooling them to manufacture more efficient gas appliances or to shift to the production of electric appliances instead—in an attempt to accommodate discrete jurisdictions all over the nation. Opening.Br.33-35. The State summarily dismisses Plaintiffs' arguments on this score as "speculation," State.Br.23, but never actually grapples with the ramifications of the Maryland BEPS. The Court need not adopt the State's wait-and-see posture to determine whether the Maryland BEPS undermine EPCA's objectives. *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 117 (2014) (noting "the disuniformity that would arise from the multitude of state laws").

The State's reliance on EPCA's general conservation goals, which the State says are "inconsistent" with Plaintiffs' interpretation of EPCA, likewise misses the mark. State.Br.38. EPCA can authorize federal financial assistance for voluntary "energy conservation measures and renewable-resource energy measures" while also prohibiting states from imposing their own restrictions on covered products. 42 U.S.C. § 6325(e)(1). The State's invocation of the federal-building provision in 42 U.S.C. § 6834(a)(3)(D) is similarly misplaced. State.Br.38. That provision directs the federal government, acting as owner and operator of its own buildings, to reduce fossil-fuel-generated energy consumption in new federal buildings and major

renovations. It does not authorize states to regulate the energy use of EPCA-covered appliances or amend or create an exception to EPCA's preemption provision. Nothing is anomalous about Congress imposing one rule on its own federal facilities while separately limiting state regulation of products sold in interstate commerce.

### C. To the extent it matters, the State misinterprets "energy use" and "point of use."

The State heavily focuses on the definitions of "energy use" and "point of use." State.Br.15-18, 30-33. Those efforts are misplaced, however, because Plaintiffs' preemption arguments do not rest on any particular definition of those terms. As Plaintiffs have explained, the Maryland BEPS would be preempted even under the State's overly narrow interpretation of EPCA's preemption provision. Opening.Br.24-25. So this definitional disagreement is immaterial.[4]

In any event, the State is wrong on both definitional points. With respect to "energy use," the State does not dispute that §§ 6295(*l*)(1)(B) and 6292(b)(1)(B) both refer to actual, real-world energy use. In fact, the State concedes it, admitting that "energy use" in those provisions "*cannot* be understood as referring to a static value associated with a product." State.Br.32 (emphasis in original). Those

---

[4] Notably, the State relies on other decisions that have adopted narrow definitions of these terms in rejecting other EPCA challenges. State.Br.35-36. None of those cases, of course, binds this Court, so they matter only for the persuasiveness of their reasoning. On that score, none of those opinions has grappled with the argument that Plaintiffs make here—that EPCA preemption would apply even under those narrow definitions.

provisions are instructive because like the preemption provision, they demarcate the limits of EPCA's reach. "Energy use" should carry the same meaning across these similar contexts.

The State seems to disagree with this contextual approach to interpreting EPCA. It argues that the fact that "applying the statutory definition would be incongruous or nonsensical in certain instances does not warrant deviating from that definition elsewhere." State.Br.32. But the interpretive task has never been a rigid mission to force a statutory definition onto terms until it becomes "nonsensical." *Contra id.* It is instead context-based, with an eye toward advancing statutory objectives and harmonizing all the provisions. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) ("[T]he presumption of consistent usage 'readily yields' to context, and a statutory term—even one defined in the statute—'may take on distinct characters from association with distinct statutory objects calling for different implementation strategies.'" (quoting *Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007))). That is the case here, where the statutory context points toward a plain-language reading of "energy use" in EPCA's preemption provision.

As for "point of use," the State does not reach the high bar for forcing a highly technical definition despite the rule that "[t]his court generally gives undefined terms their ordinary or natural meanings." *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 953 (4th Cir. 2025). "Point of use" simply means the point

where the product is used and thereby reinforces the focus on the energy use of products in the real world. *See Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1101 (9th Cir. 2024) ("[A]s a matter of ordinary meaning, 'point of use' means the 'place where something is used.'" (quoting Oxford English Dictionary Online (2022))). This is all consistent with DOE's usage of the phrase. *See, e.g.*, 76 Fed. Reg. 51,281, 51,283 (Aug. 18, 2011) ("The point-of-use method for measuring energy consumption considers the use of electricity, natural gas, propane, and/or fuel oil by an appliance at the site *where the appliance is operated*." (emphasis added)).

### D. EPCA's legislative history reflects its broad preemptive scope.

Plaintiffs and the State agree on much regarding EPCA's statutory history. There is no dispute, for example, that "[t]he various amendments leading up to 1987 did strengthen and clarify EPCA's preemption of state and local laws that set energy conservation standards, whether directly or indirectly." State.Br.33. Nor is there any dispute that Congress's replacement of "similar requirements" with "other requirements" in 1978 was yet another preemption-expanding change. State.Br.33-34.

Plaintiffs and the State seem to part ways, however, on the effect of the 1987 NAECA amendments. According to the State, the NAECA changes did not broaden EPCA's preemption clause, but rather were intended only to exclude "design requirements." State.Br.34. Perhaps that might have been one reason for not

employing the term "energy conservation standard"—a term that includes both "performance standard[s]" and "design requirement[s]," 42 U.S.C. § 6291(6)—in the new preemption provision. But Congress could have accomplished that by limiting preemption to only "performance standards." Instead, it broadly provided for preemption of all "regulation[s] concerning the energy efficiency [or] energy use" of EPCA-covered products. 42 U.S.C. § 6297(c). The result is an expanded preemption provision that sweeps in more state regulations than its predecessor. *See* Opening.Br.36-38.

*Amicus* PHLC, for its part, argues that the legislative history does not support Plaintiffs' reading of EPCA because "the record shows an intent to preempt only regulations that directly address appliances, which the BEPS do not." PHLC.Br.4. While EPCA does indeed preempt regulations directly aimed at appliances, its preemptive scope cannot be artificially confined to that narrow sphere. EPCA's text bears this out. In addition to the word "concerning," which Plaintiffs and the State agree encompasses direct *and indirect* regulations concerning energy use and efficiency, State.Br.33, the exception for building codes demonstrates that regulations targeting buildings can be preempted as well. *See Berkeley*, 89 F.4th at 1101 ("[S]ubsection (f) demonstrates that EPCA's preemptive scope extends beyond direct or facial regulations of covered products to at least include building codes 'concerning the energy . . . use' of such products."). And that makes sense not only

because buildings are where appliances are used, but also because states like Maryland otherwise could easily sidestep EPCA preemption by directing their regulations to a different part of the market. *Cf. Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 255 (2004) (observing that it "would make no sense" to allow state regulations to escape preemption because they addressed the purchase, rather than manufacture, of a federally regulated product).

**E. This case does not implicate the State's parade of horribles.**

The State also worries that Plaintiffs' view of EPCA preemption would intrude upon its general police powers, imperiling all sorts of health-and-safety regulations. *See* State.Br.40-41; *see also* PHLC.Br.18-21; States.Br.19-20. That concern is misplaced. To be sure, delineating the outer bounds of EPCA preemption will involve some edge cases. But this is not one of them. The Maryland BEPS are not a zoning ordinance with incidental or peripheral effects on gas appliances or some targeted provision of a fire code. They essentially are a supercharged building code since they apply even to existing buildings and thus are precisely the kind of local regulation that EPCA preemption covers. *See* Opening.Br.29-33, 45-48. And they restrict a direct proxy for gas appliances' energy use in many buildings throughout the State. Because that kind of law falls within the core of EPCA's preemption provision, the Court can and should wait for closer cases to make the tough calls regarding the limits of EPCA preemption. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*,

567 U.S. 519, 585 (2012) ("It is enough for today that wherever that line may be, this statute is surely beyond it."); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012) ("[W]e have no occasion to inquire how RFRA applies outside a military setting. Those questions are not before us, and we have no need to address them.").

The State's concern on this score appears to stem in part from its misunderstanding of the precise preemption question presented here. The State insists that "there is no textual basis for concluding that EPCA has a broad purpose of preserving consumers' access to gas-fueled products (or manufacturers' access to markets for such products), or that EPCA created a right for consumers to use whatever such products manufacturers are willing to supply." State.Br.37. But the question in this case is not whether EPCA guarantees unfettered access to gas appliances or whether it obligates the State to supply natural gas. Rather, it is whether states can promulgate building-level regulations that concern the energy use and energy efficiency of EPCA-covered gas appliances. The Ninth Circuit dispatched this rights-based argument for similar reasons. *See Berkeley*, 89 F.4th at 1106 (noting that it "does not follow" from its decision that "the City must affirmatively make natural gas available everywhere" because its "very narrow" holding "doesn't touch on whether the City has any obligation to maintain or expand the availability of a utility's delivery of gas to meters"). This Court can do the same.

Lastly, to the extent the State suggests that EPCA cannot intrude on states' traditional police powers, that is wrong. There is no Tenth Amendment or police-powers exception to federal preemption. Both this Court and the Supreme Court have recognized as much. *See, e.g.*, *Rowe*, 552 U.S. at 374 ("Despite the importance of the public health objective, we cannot agree with Maine that the federal law creates an exception on that basis, exempting state laws that it would otherwise pre-empt."); *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1148 n.6 (4th Cir. 1985) (rejecting a state official's "argument for a Tenth Amendment exemption from ERISA's preemption . . . or an exception based on the state's police power"), *abrogated on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). So while the State can exercise its valid police and regulatory powers, it cannot do so in a manner federal law preempts.

### F. The State's facial-challenge point rests on its misunderstanding of the preemption question.

Like the district court's facial-challenge holding, the State's similar argument rests on the premise that the Maryland BEPS are not preempted when a regulated party pays the alternative compliance fee instead of altering its use of gas appliances. *See* JA37-38; State.Br.46-49. That is a faulty premise. As Plaintiffs have explained, the alternative compliance mechanisms do not cure the preemption problem. *See supra* § II.A; Opening.Br.51-52. Even where a building owner elects to pay the fee rather than give up its gas appliances, the Maryland BEPS would remain preempted

for that building. The net CO2e cap would still operate as a regulation concerning the energy use and energy efficiency of gas appliances for that building. Its effect would merely manifest in a different way in that instance—as a monetary penalty on gas appliances' energy use.

In fact, EPCA would preempt the Maryland BEPS' application even to buildings where the owner does not currently use EPCA-covered gas appliances because they would still be regulations concerning the energy use and energy efficiency of EPCA-covered gas appliances for that building. That the regulation would cause no harm in that instance does not mean it escapes preemption. For example, if a federal statute preempts state speed limits below 55 miles per hour, it would still facially preempt a state's 40-mile-per-hour limit for highways even if there were a few highways where no one drives faster than 40 anyway. It is the same with the Maryland BEPS.[5]

---

[5] Even if Plaintiffs' challenge were overbroad, any overbreadth issues can be addressed by limiting the relief granted. After all, "the distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Accordingly, the Court can remedy any problem on this score by tailoring its injunction, such as by enjoining enforcement of the Maryland BEPS only in their applications to EPCA-covered products. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (when "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs[,] [t]hey must therefore satisfy our standards for a facial challenge to the extent of that reach"); *United States v. Sup. Ct. of New Mexico*, 839 F.3d 888, 914 (10th Cir. 2016) ("facial standards are applied . . . only to the universe of applications contemplated

## IV. *Amici*'s arguments do not alter the result.

*Amici* advance a few unique arguments, but none helps the State.

*First*, *amicus* PHLC asserts that Plaintiffs improperly focus on gas energy when "EPCA does not divide energy use in that way." PHLC.Br.24. The statutory text says otherwise. EPCA defines "energy" to include both "electricity" and "fossil fuels," 42 U.S.C. § 6291(3), and directs DOE to prescribe certain levels of energy use and efficiency for products within the same class when they "consume a different kind of energy," *id.* § 6295(q)(1)(A). Conventional cooking tops provide one example. *See* 10 C.F.R. § 430.32(j)(1)(iii) (gas cooking tops are subject to a "[m]aximum integrated annual energy consumption" of 1,770 kBtu/year, while electric ones are subject to a limit of 207 kWh/year). So EPCA does indeed distinguish between products based on their fuel type, drawing a distinct line for gas appliances in particular. Contrary to PHLC's view, then, the Maryland BEPS' effects on the energy use and energy efficiency of covered gas appliances do not save them, but instead reinforce their inconsistency with EPCA.

*Second*, although the State concedes that EPCA's "preemptive scope extends beyond regulations that purport to issue energy conservation standards," State.Br.18, its *amici* insist that EPCA preempts only regulations that are literal energy

---

by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision").

conservation standards. *See, e.g.*, States.Br.6 ("EPCA does not preempt state and local regulations unless they concern the 'energy efficiency' or 'energy use' of a covered product—that is, unless they establish (directly or otherwise) an 'energy conservation standard' for an appliance."). Notably, in their final form, the Maryland BEPS will operate like a classic energy conservation standard that sets a maximum quantity of energy use of 0 kBtu/year. Opening.Br.16-18. But, in any event, EPCA preemption is not so narrow.

For one, as Plaintiffs have explained, EPCA's text and the evolution of EPCA's preemption provision demonstrate a broad preemptive scope that extends beyond energy conservation standards. *See supra* §§ I, III.D; Opening.Br.16-24, 36-39.

EPCA's exception for building codes is informative here as well. To meet the exception, the building code must "not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard." 42 U.S.C. § 6297(f)(3)(B). So even with the state regulation in question included, the code cannot set a standard for a covered product exceeding the relevant federal standard. Two conclusions follow. First, regulations setting competing energy conservation standards can never qualify for the exception, because they would require exactly that. Second, EPCA preemption cannot be limited to regulations setting energy conservation standards; otherwise, the exception would never apply. That dovetails

with the other interpretive indicia to confirm that EPCA preemption reaches more than only energy conservation standards.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ J. Mark Little*
J. Mark Little
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Scott Novak
700 K Street NW
Washington, D.C. 20001
(202) 304-5099
scott.novak@bakerbotts.com

Daniel B. Rankin
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,342 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

*/s/ J. Mark Little*
J. Mark Little

**CERTIFICATE OF SERVICE**

I certify that on August 19, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*/s/ J. Mark Little*
J. Mark Little