BAKER BOTTS L.L.P.

910 LOUISIANA
HOUSTON, TEXAS
77002-4995

TEL +1 713.229.1234
FAX +1 713.229.1522
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HOUSTON
LONDON
NEW YORK
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

November 17, 2026

J. Mark Little
Partner
TEL: 7132291489
FAX: 7132292789
mark.little@bakerbotts.com

Nwamaka Anowi
Clerk of the Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: No. 26-1552, *Maryland Building Industry Association, et al. v. Serena Coleman, in her official capacity as the Secretary of the Maryland Department of the Environment*

Dear Ms. Anowi:

Pursuant to Federal Rule of Appellate Procedure 28(j), Plaintiffs submit this letter to advise the Court of an order from the District of Colorado, *Colorado Apartment Association, et al. v. Ryan, et al.*, No. 24-cv-01093 (D. Colo. Sept. 30, 2026). The district court's reasoned order adopts the magistrate judge's recommendation that Plaintiffs apprised the Court of in their letter dated August 28, 2026. The district court's order is attached to this letter.

Respectfully submitted,

By: */s/ J. Mark Little*
J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Scott Novak
700 K Street NW
Washington, D.C. 20001
(202) 304-5099
scott.novak@bakerbotts.com

Daniel B. Rankin
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for Appellants*

cc: All counsel of record via ECF

## CERTIFICATE OF COMPLIANCE

1. This letter complies with the type-volume limitation of Fed. R. App. P. 28(j) because it contains 72 words, excluding exempted parts.

2. This letter complies with the typeface and typestyle requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ J. Mark Little*
J. Mark Little

## CERTIFICATE OF SERVICE

I certify that on November 17, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*/s/ J. Mark Little*
J. Mark Little

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 24-cv-01093-RMR-KAS

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER,

Plaintiffs,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office;

AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MICHAEL JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency,

Defendants,

AND

THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB.

Intervenor-Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION**

---

State and local governments across the country have introduced legislation aimed at combatting climate change and reducing greenhouse gas ("GHG") emissions. At the federal level, the Energy Policy and Conservation Act of 1975 ("EPCA") authorizes the Department of Energy to establish mandatory efficiency standards for residential and industrial appliances. This case concerns the intersection of those regulatory schemes.

Plaintiffs Colorado Apartment Association and Apartment Association of Metro Denver ("CAA" and "AAMD"), the Colorado Hotel and Lodging Association, Inc. ("CHLA"), and the NAIOP Colorado Chapter ("NAIOP Colorado") (collectively, "Plaintiffs") challenge two sets of building performance standards adopted by the State of Colorado and the City of Denver:

- The Colorado Air Quality Control Commission's ("Commission") final regulation entitled Building Benchmarking and Performance Standards, 5 CCR 1001-32 ("Regulation 28") enacting regulations directed by the State of Colorado's House Bill 21-1286; and

- The City and County of Denver, Colorado's Denver Ordinance No. 20211310 ("Energize Denver Ordinance"), and the implementing rules for Energize Denver enacted by the Denver Office of Climate Action, Sustainability, and Resiliency, ("Denver OCASR") entitled "Rules & Regulations Governing Energize Denver Building Energy Performance Requirements" ("Energize Denver Regulations") (the Ordinance and Regulations may be collectively referred to as "Energize Denver").

ECF No. 1. Plaintiffs brought this action in April 2024. *Id.* On March 28, 2025, the Court dismissed Plaintiffs' claims without prejudice. ECF No. 55. After obtaining leave to amend, Plaintiffs filed the operative Amended Complaint on August 29, 2025, ECF No. 68.[1]

[1] Plaintiffs filed an Unopposed Motion for Extension of Time to File Motion for Leave to Amend Complaint, ECF No. 56, which the Court granted on April 4, 2025, ECF No. 57.

USCA4 Appeal: 26-1552 Doc: 72 Filed: 11/17/2026 Pg: 6 of 29

Three groups of Defendants moved to dismiss the Amended Complaint: (1) City and County of Denver, the Denver City Council, Denver Mayor Michael Johnston, the Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock (collectively, "City Defendants"); (2) Jill Hunsaker Ryan, Michael Ogletree, and Will Toor (collectively, "State Defendants"); and (3) the Coalition for Community Solar Access, Colorado Solar and Storage Association, Natural Resources Defense Council, and Sierra Club (collectively, "Intervenor-Defendants"). ECF Nos. 71, 72, and 75. Additionally, Intervenor-Defendants filed a Motion for Order to Take Judicial Notice. ECF No. 73.

On August 21, 2026, Magistrate Judge Starnella recommended the Court grant the Motion for Order to Take Judicial Notice, ECF No. 73, grant in part and deny in part City Defendants' Motion to Dismiss, ECF No. 71, deny State Defendants' Motion to dismiss, and grant in part and deny in part Intervenor-Defendants' Motion to Dismiss, ECF No. 75. ECF No. 106. Each group of parties filed an objection to the Recommendation and a response to the objections.[2] The Court has reviewed the briefing and record as a whole. For the reasons stated below, the objections are overruled and the Recommendation is accepted and adopted.

[2] Intervenor-Defendants' objections at ECF No. 111. City Defendants' objections at ECF No. 112. State Defendants' objections. ECF No. 113. Plaintiffs' objections at ECF No. 114. City Defendants' response to Plaintiffs' objections at ECF No. 116. Intervenor-Defendants' response to Plaintiffs' objections at ECF No. 117. State Defendants' response to Plaintiffs' objections. ECF No. 118. Plaintiffs' response to State Defendants, Denver Defendants, and Intervenor-Defendants' objections at ECF No. 119.

## I. BACKGROUND[3]

The EPCA was passed in response to the United States' "serious long-term economic and national security problems of continued dependence on foreign oil." *Nat'l Ass'n of Home Builders of the United States v. D.C.*, No. 24-CV-02942 (ACR), 2026 WL 837674, at *2 (D.D.C. Mar. 26, 2026) (citing *Nat. Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1364 (D.C. Cir. 1985)). EPCA aimed to "reduce domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." *Id.* (citing *Herrington*, 768 F.2d at 1364). Originally, "EPCA required the Department of Energy 'to mandate energy efficiency labeling of major residential appliances and to prescribe voluntary industry appliance efficiency improvements.'" *Id.* (citing S. Rep. No. 100-6, at 3 (1987); *see* EPCA §§ 324–326). Three years later, "Congress amended EPCA to mandate minimum energy efficiency standards for appliances that consume substantial energy, such as kitchen ranges, ovens, refrigerators, and dishwashers." *Id.* (citing National Energy Conservation Policy Act (NECPA), Pub. L. No. 95-619, § 422, 92 Stat. 3206, 3259–62 (1978); *Herrington*, 768 F.2d at 1362 & n.1.). Congress also added a "waiver provision that DOE began granting as a matter of course." *Id.* Then, in 1987, "Congress amended EPCA to clamp down on the waivers and bolster EPCA's preemption provision." *Id.* (citing S. Rep. No. 100-6, at 4–5; National Appliance Energy Conservation Act of 1987 (NAECA), Pub. L. No. 100-12 § 5, 101 Stat. 103, 107–17 (codified as amended at 42 U.S.C. § 6295)). As a result, "[i]f

[3] The facts and background of this matter are incorporated herein including the "Background" section from the Recommendation, ECF No. 106 at 3-6, the Court's March 28, 2025 Order, ECF No. 55, and the Amended Complaint, ECF No. 68.

an energy conservation standard exists for a covered product, EPCA preemption now provides that 'no State regulation concerning the energy efficiency [or] energy use … of such covered product shall be effective with respect to such product.'" *Id.* (quoting 42 U.S.C. § 6297(c)).

Against this backdrop, Plaintiffs seek to block enforcement of Regulation 28 and Energize Denver, which establish and impose energy conservation standards on buildings and the appliances and equipment within those buildings, because these standards are preempted by the EPCA, 42 U.S.C. §§ 6201-6422, as amended by the National Appliance Energy Conservation Act of 1987 ("NAECA"), Public Law No. 100-12, and the Energy Policy Act of 1992 ("EPACT"), Public Law No. 102-486.

Colorado's regulation, Regulation 28, established building performance standards for select large residential and commercial buildings (buildings over 50,000 sq/ft) ("State Covered Buildings") to meet by 2026 and 2030 ("Performance Standards"). To meet the Performance Standards, State Covered Building owners must implement energy efficiency measures to meet certain Energy Use Intensity ("EUI") scores (calculated from a building's total site energy use per square foot per year), or implement measures to decrease the building's GHG emissions and reduce the GHG intensity ("GHG Intensity") score (calculated by the carbon dioxide equivalent measures in kilograms of carbon dioxide equivalent per square foot emitted per year associated with operations of a State Covered Building), or a combination of both. Regulation 28 provides owners flexibility in what efficiency measures are utilized to achieve these targets through multiple compliance pathways. Owners may also enroll in utility-offered programs, purchase

renewable energy credits, or apply to the Colorado Energy Office ("CEO") to modify their 2026 and 2030 compliance obligations.

Under Energize Denver, commercial and multifamily buildings with more than 25,000 square feet ("City Covered Buildings") are required to meet certain building performance standards in 2024, 2027, and 2030. Energize Denver requires that these covered buildings determine and report the subject building's EUI. A building's EUI is calculated as the total energy use over twelve months divided by the building's total square footage and normalized for weather. Under the regulation, every building type is given a target EUI to meet by 2030. Like Regulation 28, Energize Denver offers multiple compliance pathways to achieve the ultimate EUI goals. However, if a building owner chooses to meet the EUI target through 80% whole building electrification, OCASR offers a 10% increase to the 2030 EUI target. Additionally, the OCASR Regs offer a number of Alternate Compliance Options such as a Timeline Adjustment which gives a Covered Building additional time to meet its interim target and an alternate compliance option for a City Covered Building that has been issued a 30% reduction goal or which is limited by the Landmark Preservation Board as to what energy efficient measures can be implemented. Proof of renewable power generation, either on- or off-site, is credited towards a building's total energy use.

Finally, the EPCA regulates the energy efficiency of certain consumer and commercial equipment. Under the EPCA, these "Covered Products" are subject to energy conservation standards established by the U.S. Department of Energy ("DOE"). Section 6297(c) of the EPCA expressly provides: "[E]ffective on the effective date of an energy

conservation standard established in or prescribed under section 6295 of this title for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product . . . ." 42 U.S.C. § 6297(c). This express preemption provision prevents states from adopting or enforcing energy efficiency standards for Covered Products regulated by the EPCA. The Covered Products regulated by EPCA include consumer appliances and commercial equipment such as air conditioners, water heaters, furnaces, clothes washers and dryers, and stoves. *See* 42 U.S.C. §§ 6292; 6295; 6311(1); 6313. "Energy conservation standard" is defined as "performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use . . . for a covered product . . . ." *Id.* §§ 6291(6)(A); 6311(18). "Energy use" is defined as "the quantity of energy directly consumed by a consumer or commercial product at point of use." *Id.* §§ 6291(4); 6311(4). "Energy efficiency" is defined as "the ratio of the useful output of services from a consumer product to the energy use of such product." *Id.* §§ 6291(3); 6311(3). And "energy" is defined as "electricity, or fossil fuels." *Id.* §§ 6291(3); 6311(7). There are limited exceptions to the preemption rule for Covered Products. *Id.* §§ 6297(d)-(f); 6316(b)(2)(B).

In their operative Amended Complaint ("OAC"), Plaintiffs removed allegations concerning the impact of Regulation 28 and Energize Denver on new constructions and focus their claims to existing buildings. They also removed all allegations that they would need to replace their gas-powered appliances with those that exceed federal standards. Instead, they allege that their existing products still had remaining useful life. The City Defendants move to dismiss Plaintiffs' OAC on the basis that (1) Plaintiffs fail to state a

claim because Energize Denver does not regulate the energy use of Covered Products and because Energize Denver is designed to avoid the injuries Plaintiffs ascribe to it; (2) Plaintiffs' claims are barred by the statute of limitations; (3) Plaintiffs' claims are not ripe; and (4) Plaintiffs still lack Article III standing. ECF No. 71. The State Defendants move to dismiss the OAC for failure to state a claim, because Regulation 28 does not regulate the energy use of Covered Products. ECF No. 72. The Intervenor-Defendants move to dismiss on the grounds that Plaintiffs' claims are barred by the statute of limitations and that Plaintiffs fail to state a claim because neither Energize Denver nor Regulation 28 regulate the energy use of Covered Products. ECF No. 75.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III. ANALYSIS

### A. Judicial Notice and Justiciability

No party objects to the Recommendation's conclusions concerning Intervenor-Defendants' Motion for Judicial Notice of the enactment dates of Regulation 28 and Energize Denver or City Defendants' justiciability arguments. In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The Court has reviewed these portions of the Recommendation for clear error and finds none. *See* Fed. R. Civ. P. 72(b), advisory committee's note (1983). Accordingly, the Court accepts and adopts the Recommendation as to these issues. Intervenor-Defendants' Motion for Judicial Notice, ECF No. 73, is GRANTED, and City Defendants' Motion to Dismiss, ECF No. 71, is DENIED to the extent it argues that Plaintiffs lack standing or that their claims are not ripe. The Court will take judicial notice of the following dates:

- Colorado Air Quality Control Commission Regulation 28: published in the Colorado Register on September 25, 2023, with an effective date of October 15, 2023;
- Energize Denver Ordinance 1, Council Bill 16-1231: signed into law on December 20, 2016;
- Energize Denver Ordinance 2, Council Bill 21-1310: signed into law on November 24, 2021;
- Energize Denver regulation, version 1: issued March 29, 2017;
- Energize Denver regulation, version 2: issued January 20, 2022;

- Energize Denver regulation, version 3: issued November 23, 2022;
- Energize Denver regulation, version 4: issued July 11, 2023; and
- Energize Denver regulation, version 5: issued April 1, 2025.

**B. Statute of Limitations**

The Recommendation first addresses City Defendants' and Intervenor-Defendants' argument that some of Plaintiffs' claims are time-barred. ECF No. 106 at 15. Because EPCA's provisions governing industrial appliances were enacted after December 1, 1990, Magistrate Judge Starnella concludes that claims arising under those provisions are subject to the four-year limitations period in 28 U.S.C. § 1658(a). By contrast, EPCA's consumer appliance provisions predate § 1658(a). Relying on *Restaurant Law Center v. City & County of Denver*, No. 24-cv-01862-PAB-KAS, 2025 WL 2652871, at *9-10 (D. Colo. Sept. 16, 2025), Magistrate Judge Starnella concluded that "claims concerning consumer appliances are subject to Colorado's two-year statute of limitations." ECF No. 106 at 18. Magistrate Judge Starnella therefore recommends dismissing Plaintiffs' consumer appliance claims while allowing their industrial appliance claims to proceed. *Id.* at 20.

Plaintiffs do not object to the Recommendation's selection of the two-year limitations period, at least "to the extent a statute of limitation applies at all," but object to "the Recommendation's conclusion that those federal claims accrued on the date Energize Denver was promulgated." ECF No. 114 at 2. Plaintiffs rely on *Corner Post*, which reaffirmed the rule that "[a] right of action 'accrues' when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain

USCA4 Appeal: 26-1552 Doc: 72 Filed: 11/17/2026 Pg: 14 of 29

relief.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024)). Plaintiffs also emphasize that their challenge is "as-applied (or at most a hybrid)," rather than facial, and argue that an as-applied claim does not accrue until the plaintiff's rights are allegedly violated and all events necessary to state the claim have occurred. ECF No. 114 at 3 (quoting *GRCO LLC v. Granby Ranch Metro. Dist.*, No. 23-cv-1351-RMR-STV, 2023 WL 9104819, at *4 (D. Colo. Dec. 21, 2023)). They, therefore, contend that the accrual date could be no earlier than April 22, 2022.

Plaintiffs' argument is rooted in their assertion that their injury did not occur (and thus, their claims did not accrue) until their "members were able to perform the energy audits and related analyses necessary to determine whether Energize Denver would cause their members to sustain concrete, building-specific injuries." ECF No. 114 at 4. Plaintiffs are nonprofit corporations with members that own Covered Buildings subject to both Regulation 28 and Energize Denver. ECF No. 68 ¶¶ 18-22. There is no dispute that Plaintiffs existed and owned Covered Buildings when Regulation 28 and Energize Denver were promulgated. Thus, when Regulation 28 and Energize Denver were first introduced, Plaintiffs were informed of the regulations. In fact, in their response to Intervenor-Defendants' Motion to Dismiss, Plaintiffs stated that "Regulation 28 was promulgated on September 25, 2023, and the Energize Denver Regulations which first included enforceable building performance standards (via Energy Use Intensity ("EUI") whole building energy conservation standards) were first promulgated on January 20, 2022." ECF No. 83 at 6. Plaintiffs determined the timeliness of their claims based on the dates of promulgation. *Id.* (determining the original Complaint filed on April 22, 2024 fell within

the alleged four-year statute of limitations). In other words, Plaintiffs previously admitted that the date of promulgation was the date of accrual.

Moreover, the relevant Energize Denver regulations, promulgated on January 20, 2022, explicitly state that Energize Denver requires "performance requirements" for "[o]wners of Covered Buildings with a Gross Floor Area equal to or greater than 25,000 square feet." *Id.* at 85. Stated differently, the Energize Denver regulation issued January 20, 2022 provided the EUI targets for Plaintiffs to have knowledge of non-compliance and, thus, injury. Those regulations list the 2030 "[n]ormalized EUI targets" for each building type. *Id.* at 86-89. They also set deadlines for "interim targets for 2024 and 2027," starting with May 1, 2022. *Id.* at 89. And they provide that "CASR will establish each Covered Buildings' required interim targets for 2024 and 2027 <u>by drawing a straight line from that Covered Building's baseline EUI to the final EUI target for that building type</u>." *Id.* (emphasis added). This explanation, in combination with the table of normalized EUI targets for 2030, effectively communicated the applicable interim targets and deadlines for Plaintiffs to comply with Energize Denver. Plaintiffs argue that the January 20, 2022 version did not formally establish the first interim EUI targets until May 1, 2022. ECF No. 114 at 5. But they do not explain why the targets from the January 20, 2022 regulations were insufficient to trigger their alleged injury. Plaintiffs' theory is that Energize Denver impermissibly subjects their members' Covered Buildings to energy-performance requirements that compel the replacement of otherwise EPCA-compliant Covered Products. By January 20, 2022, the challenged regulatory requirements, final EUI targets, and methodology for calculating interim targets were already in place, and Plaintiffs had

sufficient information and knowledge to allege an injury from the regulation. The subsequent calculation and explicit identification of a particular building's interim target did not create a new regulatory requirement; it applied the methodology already prescribed by the January 20, 2022 regulations to that building. Therefore, even by Plaintiffs' own logic that their challenge is as-applied, the date of accrual was January 20, 2022.

Given Plaintiffs filed their first Complaint on April 22, 2024, the two-year statute of limitations for their consumer appliance claims passed. Accordingly, the Court overrules Plaintiffs' objection and adopts the Recommendation with respect to its recommendation to dismiss Plaintiffs' claims concerning consumer appliances.[4]

**C. Federal Preemption**

The remaining objections concern the Recommendation's analysis of whether the EPCA preempts Regulation 28 and Energize Denver. As the Recommendation aptly states, "the crux of the City, State and Intervenor-Defendants' Motions [#71, #72, #75] is the argument that Regulation 28 and Energize Denver are not preempted by the EPCA because they do not concern the energy use [or] efficiency of Covered Products." ECF No. 106 at 23. The EPCA provides, as relevant here, that a "[a] standard prescribed or established under 6313(a) of this title shall, beginning on the effective date of such standard, supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established." 42 U.S.C. § 6316(b)(2)(A). The Recommendation finds that "Plaintiffs have plausibly alleged that

[4] Given this ruling, only Plaintiffs' claims related to commercial "Covered Products" remain.

portions of Regulation 28 and Energize Denver, in full, bear an impermissible connection to Covered Products' energy efficiency or use, and are thus preempted by the EPCA." ECF No. 106 at 41. Each party has submitted objections to the "connection with" portion of the Recommendation's preemption analysis. ECF Nos. 111-14. The Court will first address State Defendants' objections, followed by City Defendants' objections, then Intervenor-Defendants' objections, and finally Plaintiffs' remaining objections.

**1. "Connection With"**

A state or local law may be preempted if it has an impermissible "connection with" the preempted subject matter. *Day v. SkyWest Airlines,* 45 F.4th 1181, 1185 (10th Cir. 2022) ("A law that does not refer to ERISA plans may yet be pre-empted if it has a 'connection with' ERISA plans."). In this case, to determine whether the challenged laws contain an impermissible "connection with" the EPCA's regulation of appliances, the Court must "turn to EPCA's objectives and also to the challenged laws' effect on the preempted subject matter." *Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, 180 F.4th 434, 442 (2d Cir. 2026) (emphases removed). In conducting that analysis, the Recommendation looked in part to the EPCA's exception from preemption for certain building codes applicable to new construction. *See* 42 U.S.C. § 6297(f); ECF No. 106 at 32-39. Magistrate Judge Starnella reasons that the exception, together with the recent decisions interpreting it, informs the scope of Congress's intended preemption and supports the conclusion that building-wide energy requirements may bear an impermissible connection to the energy use or efficiency of Covered Products. *Id.* Thus,

the Recommendation concludes that Plaintiffs have plausibly alleged an impermissible connection to the subject matter regulated by the EPCA.

State Defendants, City Defendants, and Intervenor-Defendants each object to that conclusion, although on varying grounds. State Defendants principally argue that Regulation 28 does not have the indicia of a building code and that the building code exception reflects Congress's intent only to preempt regulations that effectively require Covered Products with efficiency levels exceeding federal standards. ECF No. 113 at 5-12. City Defendants similarly contend that the building code provisions are intended to prevent circumvention of federal product standards, not building-wide energy requirements generally, emphasize the distinct building code provision applicable to commercial equipment, and that the Recommendation disregarded the fact that the EPCA's building code exception applies only to codes for new buildings. ECF No. 112 at 6-12. Intervenor-Defendants likewise argue that the building code exception does not expand EPCA's preemptive scope and that building wide EUI requirements do not concern a Covered Product's EPCA-defined "energy use" merely because compliance may result in the replacement of Covered Products. ECF No. 111 at 4-9. For the following reasons, the Court does not find these arguments persuasive.

**a. Building Code Exception**

Section 6316(b)(2)(A) is the EPCA preemption provision for industrial appliances. It states that "[a] standard prescribed or established under 6313(a) of this title shall, beginning on the effective date of such standard, supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is

prescribed or established." 42 U.S.C. § 6316(b)(2)(A). The Recommendation notes that the preemption language of the EPCA is rooted in its use of the word "concerning." ECF No. 106 at 24. The Supreme Court has established that preemption occurs when a state law has a "reference to" or "connection with" a federal law, even when the state law does not refer to the federal law. *Day v. SkyWest Airlines*, 45 F.4th 1181, 1185 (10th Cir. 2022) ("A law that does not refer to ERISA plans may yet be pre-empted if it has a 'connection with' ERISA plans."). Here, the word "concerning" triggers the "connection with or reference to" test. ECF 106 at 24.

The Recommendation first points to the consensus across federal courts that state and local regulations that "do not set a floor on energy efficiency or a ceiling on energy use for any particular appliance regulated by the EPCA" do not "refer to" the preempted subject matter of the EPCA. ECF No. 106 at 27-28 (collecting cases). State Defendants do not appear to dispute the Recommendation's conclusion that Regulation 28 is not preempted under the "reference to" test. Instead, State Defendants take issue with the Recommendation's "connection with" analysis, finding that Plaintiffs have plausibly alleged that Regulation 28 is within the EPCA's building code exception. ECF No. 113 at 4. Similarly, City Defendants argue that: (1) the "EPCA's building code exceptions do not evince a congressional purpose that conflicts with Energize Denver, but merely show Congress's concern for circumvention," ECF No. 112 at 6-10; and (2) that "[d]icta from recent case law is in accord with Denver's interpretation," *id.* at 10-12.

To determine whether the challenged laws contain an impermissible "connection with" the EPCA's regulation of appliances, the Court must "turn to EPCA's objectives and

also to the challenged laws' effect on the preempted subject matter." *Contracting Plumbers*, 180 F.4th at 442 (emphases removed). The EPCA includes an exemption to preemption for certain building codes for new constructions. *See* 42 U.S.C. §§ 6297(f), 6316(b)(1)(B)(i). Magistrate Judge Starnella reasons that this exemption to preemption demonstrates Congress's intent to limit whole-building energy conservation standards. The Amended Complaint alleges that Regulation 28 and Energize Denver regulate building-wide energy usage. *See* ECF No. 68 ¶¶ 44-46 (describing building performance standards under Regulation 28 that look to "a building's total site energy use per square foot per year"), 81-83 (describing "building performance standards in the Energize Denver Regulations"). Thus, Magistrate Judge Starnella reasons that Plaintiffs have plausibly alleged that Regulation 28 and Energize Denver impermissibly intrude on the EPCA's objective of regulating building-wide energy usage.

State Defendants submit three arguments: (1) that the Recommendation erred in its analysis because "Regulation 28 does not have the indicia of a building code," ECF No. 113 at 5-6; (2) that the Recommendation does not address the argument that the building code exception indicates Congress's "intent to preempt only prescriptive regulations requiring the use of Covered Products that have an energy efficiency rating in excess of federal standards," *id.* at 6-10; and (3) that the "[d]icta from recent cases confirm the narrow scope of EPCA preemption and its inapplicability to regulations that do not require the use of 'hyper-efficient' appliances," *id.* at 10-12. State Defendants request the Court "clarify that EPCA only preempts regulations imposing whole-building energy conservation standards effectively requiring the installation of Covered Products

that have an energy efficiency rating in excess of federal standards and that Regulation 28 Is not such a regulation." *Id.* at 12.

State Defendants' objections miss the mark. The reason the Recommendation looks to the building code exemption is to determine Congress's intent about the preemption of building regulations, not to "delineate the scope of the preemption clause." ECF No. 106 at 35 (citing *Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain*, 828 F. Supp. 3d 617, 636 (D. Md. 2026)). In *California Restaurant*, Judge Friedland wrote that "a preemption provision without the word 'concerning' might not preempt building codes that set standards by, for example, capping overall energy consumption per apartment or per building." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1125 (9th Cir. 2024). *Maryland Building Industry* found that the "building code exception tells us that Congress did not intend to preempt building codes that meet the exception's criteria" but "Congress wanted to preempt (at a minimum) state or local building codes that set an 'objective' for 'energy consumption' or 'conservation.'" 828 F. Supp. 3d at 637. The District of Maryland court further found that "§ 6297(f) also signals that Congress intended to preempt state regulations that require the installation of covered products whose energy efficiency exceeds federal standards." *Id.* at 638. *Mulhern* agreed that regulations setting "a maximum building-wide energy consumption limit . . . would be an indirect regulation concerning the energy use of the covered products that could be used in that building" and thus would be "clearly preempted." *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 326 (N.D.N.Y. 2025)

Most recently, the Second Circuit confirmed "the kind of regulations covered by the building code exemption provide a useful 'check' for the viability of our interpretation of the preemption provision." *Contracting Plumbers*, 180 F.4th at 447. Comparing its interpretation of the preemption provision with the building code exemption, the Circuit Court concluded that "it is not the prohibitive nature of a regulation governing covered products that triggers preemption; it is the law's use of the appliance's 'energy use' as a mechanism for regulation." *Id.* at 447 n.12. Considering this, the Recommendation appropriately concludes that "regulations imposing building-wide energy reductions very well could be" preempted by the EPCA. ECF No. 106 at 37.

Therefore, the Court finds State Defendants' objections unpersuasive. The Recommendation did not analyze the building code exemption to determine whether or not Regulation 28 is indeed preempted. To be sure, at the motion to dismiss stage, such a merits-based analysis would be inappropriate. Instead, the Recommendation turned to the building code exemption, as many other courts have, to determine Congress's intent in its preemption provision. The Recommendation reasonably concluded that Congress could have intended to preempt regulations that impose building-wide energy reductions, such as Regulation 28. At this juncture, the Court need not definitively determine Congress's intent or the actual scope of EPCA preemption. The Court only needs to find that Plaintiffs have plausibly alleged such preemption may be applicable to Regulation 28. For the reasons stated above, the Court finds Plaintiffs have indeed satisfied this burden, and the State Defendants' objection is OVERRULED.

City Defendants similarly attempt to overcome the Recommendation's analysis by arguing that the building code exemption "shows that Congress wanted to preclude state building codes that mandate a product-specific energy-efficiency level beyond that required by Federal law." ECF No. 112 at 7. In other words, City Defendants contend that Congress only wanted to preclude regulations that require energy-efficiency levels beyond those required by the EPCA. They point to the National Appliance Energy Conservation Act ("NAECA") Senate Report, which explained that "§ 6297(f) is 'designed to ensure the performance-based building codes cannot circumvent the federal standard for a given covered product by effectively requiring the installation of such product with an efficiency exceeding the applicable Federal standards or State standards for which a waiver from preemption has been obtained.'" *Id.* at 8 (citing S. Rep. No. 100–6, at 11). However, as the Court has explained above, the relevant dicta suggest that "it is not the prohibitive nature of a regulation governing covered products that triggers preemption; it is the law's use of the appliance's 'energy use' as a mechanism for regulation." *Contracting Plumbers*, 180 F.4th at 447 n.12. City Defendants do not dispute that Plaintiffs have alleged that Energize Denver sets building-wide standards for building owners. Thus, Energize Denver uses "energy use" as a mechanism for regulation, which may trigger the EPCA's preemption.

City Defendants further suggest that the EPCA "exclusively regulates *new* covered products" and that "Energize Denver is not the kind of building code for which either 6316(b)(1)(B) or 6297(f) were enacted." *Id.* at 8-9 (emphasis original). While both may be true, these arguments address the merits of Energize Denver's alleged preemption rather

than Plaintiff's plausible claim of preemption. Plaintiffs have alleged that "Covered Buildings under the Energize Denver Regulations are given a target EUI performance score for the 2030 deadline, set by 'property type'" and that these EUI scores "*de facto* regulate the energy efficiency of Covered Products because the only sources of GHG emissions are the energy consuming equipment and fixtures within a Covered Building." ECF No. 68 ¶¶ 81-83. Plaintiffs also claim that the "EUI building performance standards are so stringent that the only feasible way for the vast majority of Covered Buildings to comply is, in addition to implementing any other energy efficiency measures, to remove existing, EPCA compliant Covered Products with remaining useful life and replaced them with higher efficiency, typically electric, Covered Products." *Id.* ¶ 84. By claiming that Energize Denver requires building-wide energy efficiency targets and removal of EPCA compliant "Covered Products," the Amended Complaint sufficiently alleges that Energize Denver conflicts with and is preempted by the EPCA. Accordingly, City Defendants' objection to the Recommendation is OVERRULED.

**b. Intervenor-Defendants' Objections**

Intervenor-Defendants proffer slightly different objections than City and State Defendants. Intervenor-Defendants agree with the Recommendation's determination that Energize Denver and Regulation 28 "impose building-wide energy and emission standards, leaving building owners with the choice of how to comply, without reference to or regard for the energy use of any particular appliance." ECF No. 111 at 4 (citing ECF No. 106 at 28). However, Intervenor-Defendants disagree with the Recommendation's

ultimate conclusion that Plaintiffs have plausibly alleged Energize Denver and Regulation 28 may be preempted by the EPCA. *Id.*

First, Intervenor-Defendants claim that Regulation 28 and Energize Denver "do not directly or indirectly concern covered products' 'energy use'" and, therefore, must not be preempted by the EPCA. *Id.* Intervenor-Defendants contend the Amended Complaint fails to allege that the respective regulations' "EUI targets could affect covered products' 'energy use' if they were so stringent that the only way to comply was to install new covered products whose 'energy use' exceeds federal energy conservation." *Id.* at 5. Like the other Defendants, Intervenor-Defendants rely on too narrow of a read of the relevant dicta and the current understanding of EPCA preemption. As the Court has already explained, "it is not the prohibitive nature of a regulation governing covered products that triggers preemption; it is the law's use of the appliance's 'energy use' as a mechanism for regulation." *Contracting Plumbers*, 180 F.4th at 447 n.12. While an analysis of the merits of Plaintiffs' claims may prove Intervenor-Defendants correct, the Court remains convinced that Plaintiffs' Amended Complaint sufficiently alleges that Energize Denver and Regulation 28, as regulations that impose general building-wide requirements, could be preempted by the EPCA.

Next, Intervenor-Defendants present an argument similar to that of City and State Defendants—that the Recommendation erred in finding that recent dicta discussing the building code exemption suggests "that EPCA must preempt any building-wide energy cap." ECF No. 111 at 7. Like the other Defendants, Intervenor-Defendants overstate the Recommendation's conclusion. Magistrate Judge Starnella's conclusion is clear: "outright

USCA4 Appeal: 26-1552 Doc: 72 Filed: 11/17/2026 Pg: 26 of 29

bans of certain types of Covered Products based on fuel source and building-wide regulations concerning greenhouse gas emissions are *not* preempted by the EPCA, but regulations imposing building-wide energy reductions very well could be." ECF No. 106 at 37 (emphasis added). Thus, the Recommendation does not suggest that the EPCA does or must preempt building-wide energy reductions. It merely concludes that Plaintiffs have plausibly alleged that the EPCA could preempt such regulations. Thus, for the same reasons explained above, the Court is unpersuaded by Intervenor-Defendants' building code exemption argument.

Finally, Intervenor-Defendants argue that, even under the Recommendation's finding, "no part of Regulation 28 would be preempted," because "building owners are expressly allowed to comply through other pathways, without needing to meet any EUI target." ECF No. 111 at 11-12. Intervenor-Defendants contend that "Regulation 28's EUI target does not impose any requirements that the Recommendation says are preempted." *Id.* at 12. However, Plaintiffs have plausibly alleged that "Regulation 28's compliance pathway concerning energy-use intensity, as applied to existing buildings, is preempted by the EPCA because it bears an impermissible connection to the energy use and efficiency of appliances covered by the EPCA." ECF No. 106 (citing ECF No. 68 ¶¶ 48-66). At this stage in the proceeding, that is sufficient for Plaintiffs' claims against Regulation 28 to survive. Therefore, Intervenor-Defendants' objections are OVERRULED.

**2. Plaintiffs' Remaining Objections**

Finally, Plaintiffs object to the Recommendation's conclusion that Regulation 28 and Energize Denver do not "refer to" a covered product's "energy use" under the EPCA. ECF No. 114 at 6-8. Plaintiffs argue that "Regulation 28 and Energize Denver regulate Covered Products specifically because their energy use, however defined, is allegedly too high." *Id.* at 7. Indeed, Plaintiffs' Amended Complaint alleges that both regulations "concern[] the energy efficiency of Covered Products in Covered Buildings," ECF No. 68 ¶¶ 168, 175, but the regulations themselves do not concern the covered products or appliances themselves, *see* ECF No. 74. Thus, the Court is not persuaded that Plaintiffs have plausibly alleged Regulation 28 or Energize Denver regulate "covered products" rather than "covered buildings." Indeed, in *McIlwain*, the District of Maryland concluded that the state regulation that imposed "emissions requirements [that] d[id] not change depending on the energy use or energy efficiency of covered products in those buildings" did not "refer to" the energy efficiency or energy use of covered products. 828 F. Supp. 3d at 633.

Plaintiffs additionally object to the Recommendation's finding that the portions of Regulation 28 regarding GHG intensity are not subject to preemption. ECF No. 114 at 9-11. Plaintiffs contend that the case law the Recommendation relies on are distinguishable from the instant case, because (1) in *McIlwain*, the "regulations were designed to require 'net zero' emissions only from fossil fuel-utilizing equipment, rather than from all equipment; and (2) in *District of Columbia*, the regulations "required a building to achieve 'net zero' energy consumption without reference to any building operations or equipment."

*Id.* at 9 (citing *McIlwain*, 828 F. Supp. 3d at 639; *District of Columbia*, 2026 WL 837674, at *3). Plaintiffs attempt to argue that Regulation 28's "GHG intensity cap is in reality 'an energy cap' that is preempted." *Id.* at 11. To be sure, GHG intensity is inarguably connected to energy efficiency. However, Plaintiffs' argument fails to identify how Regulation 28's GHG intensity cap is distinguishable from the "Building Energy Performance Standards ("BEPS"), which set greenhouse gas emissions targets for certain state-owned, commercial, and multifamily residential buildings in Maryland, *McIlwain*, 828 F. Supp. 3d at 621, or the Clean Buildings Act's "net-zero-energy standard," *District of Columbia*, 2026 WL 837674, at *3. In both those cases, the court found that the energy efficiency target set by the state or local regulation was not preempted by the EPCA. Thus, the Court is not persuaded by Plaintiffs' argument that Regulation 28's specific GHG intensity cap is preempted, and Plaintiffs' objections are OVERRULED.

## IV. CONCLUSION

For the reasons set forth, the Court ORDERS:

1. Intervenor-Defendants' Motion for Judicial Notice, ECF No. 73, is GRANTED;
2. Intervenor-Defendants' Objection to the Recommendation, ECF No. 111, is OVERRULED
3. City Defendants' Objection to the Recommendation, ECF No. 112, is OVERRULED;
4. State Defendants' Objection to the Recommendation, ECF No. 113, is OVERRULED;
5. Plaintiffs' Objection to the Recommendation, ECF No. 114, is OVERRULED;

USCA4 Appeal: 26-1552 Doc: 72 Filed: 11/17/2026 Pg: 29 of 29

6. The Recommendation, ECF No. 106, is ACCEPTED AND ADOPTED;
7. Intervenor-Defendants' Motion for Leave to Reply to Response, ECF No. 120, is DENIED;
8. City Defendants' Motion for Leave to Respond to Statement of Interest, ECF No. 121, is DENIED;
9. City Defendants' Motion to Dismiss Amended Complaint, ECF No. 71, is GRANTED IN PART and DENIED IN PART;
   a. The Motion is GRANTED IN PART with respect to Plaintiffs' claims concerning consumer appliances;
10. State Defendants' Motion to Dismiss Amended Complaint, ECF No. 72, is DENIED;
11. Intervenor-Defendants' Motion to Dismiss Amended Complaint, ECF No. 75, is GRANTED IN PART and DENIED IN PART;
    a. The Motion is GRANTED IN PART with respect to Plaintiffs' claims concerning consumer appliances; and
12. Plaintiffs' claims concerning consumer appliances are DISMISSED WITH PREJUDICE.

DATED: September 30, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge